ALONZO V. LYNDE & another *vs.* JOHN McGREGOR.

For the purpose of proving that the grantee in a conveyance knew that his grantor was in-solvent at the time of making it, the testimony of an attorney at law is competent, that shortly before that time the grantee came to him and said that the grantor's father-in-law wished to see him; that he had got involved by signing notes for the grantor which the grantor could not take care of; and that they afterwards came to see him, and the father-in-law had a private interview with him.

f the purpose of a conveyance of real estate of a married woman was to defraud her hus-band's creditors, by putting out of their reach his interest as tenant by the curtesy initiate, and the grantee participated in this fraudulent purpose, it is competent, in an action against such grantee to set aside as fraudulent another conveyance made at about the same time by the husband to him, to prove this, in order to show the relation of the parties to each other, although in tact the husband had no attachable interest in her land.

Arranging a transaction in such a manner as to furnish facilities for fraud, and attempting a fraud under it, though long afterwards, will be competent evidence to show that fraud was originally contemplated.

Evidence of subsequent fraudulent conveyances is competent to show that previous convey-ances between the same parties were fraudulent, if the nature of the whole transaction and the relations of the parties show that they were all parts of one scheme and executed for one purpose, though not on the same day.

A conveyance fraudulent as against creditors at common law may be avoided by an as-signee in insolvency, and the value of the property recovered from the fraudulent grantee, under Gen. Sts. *c.* 118, § 91, if made within six months prior to the filing of the petition in insolvency.

If, in connection with the cross-examination of a party to an action, answers previously given by him in the course of a written examination are put in evidence, he may on his part read to the jury all his answers in the same examination which pertain to the same subject, but not those which relate to other subjects.

Partially rescinding a contract made with intent to defraud creditors, and advancing a new consideration in part under a new agreement, will not purge the fraud or make the con-tract valid to any extent. To have that effect, the whole illegality must be abandoned.

Tort, brought on the 16th of June 1865, by the assignees of Edward P. Boardman, of Milton, an insolvent debtor, to recover the value of personal property alleged to have been transferred by him to the defendant in fraud of creditors and of the insolvent laws; some by a mortgage dated May 12th 1864; some by a mortgage dated May 18th 1864; and the residue by sales at different times in June 1864. The first publication of notice of the issuing of the warrant in insolvency was upon the 11th of July 1864.

At the trial in this court, before *Gray,* J., the plaintiffs, as evidence tending to show that the defendant knew that Boardman was insolvent at the time of these conveyances, introduced the following testimony of an attorney in Lawrence, where the defendant resided: " On the 11th of April 1864, John McGregor came to my office in Lawrence, and said that John Myers, who was Boardman's father-in-law, was in town, and wanted to see me; that Myers had got involved by signing notes for Boardman which Boardman could not take care of, and that he (McGregor) hoped I would do the best I could for Myers. I fixed the time, and McGregor and Myers came to see me, and I had a private interview with Myers." The defendant objected to the admission of this testimony, upon the ground that it related to a communication between counsel and client, or an agent of the client, acting for him. But the objection was overruled, and the evidence admitted.

The plaintiffs offered evidence tending to prove that, on the 20th of May 1864, Boardman and his wife executed to the defendant a mortgage of her land in Milton, in which he had an estate by the curtesy, which mortgage Boardman caused to be recorded on the same day, and the defendant afterwards took from the registry ; that this mortgage was expressed to be made to secure the payment of a promissory note for $6500, but that Boardman never received upon it but $2000; and he testified that the note for $6500 was given as collateral security for $2000, that no other money was ever received on this mortgage, and that McGregor never to Boardman's knowledge claimed more than that sum, but declined to give a receipt for the $2000, saying that if Boardman would trust him he would be honorable with him. The plaintiffs contended that the whole mortgage was fraudulent. The plaintiffs, for the purpose of proving that the mortgage of May 20th was fraudulent, offered evidence that the defendant, in his written answers to an examination under an order of the judge of insolvency, in the autumn of 1865, and in an answer filed in February 1866 to a bill in equity brought by the plaintiffs to assert their title in the land conveyed by this mortgage, claimed that the whole sum of $6500 was really lent by him to Boardman upon this mortgage. The defendant objected that this evidence had no tendency to show the intent of the defendant at the time of receiving that mortgage. But the evidence was admitted ; and it was ruled that the fact that the defendant in those answers claimed $6500, when only $2000 had been in part advanced, was evidence to be submitted to the jury of a fraudulent intent to claim too much at the time of receiving the mortgage, and that if the jury were satisfied that such fraudulent intent existed at the time of the mortgage of May 20th, it was competent evidence upon the issue whether the mortgage executed on the 18th of May was fraudulent. The plaintiffs also introduced evidence tending to show that, upon the 19th of May 1864, Boardman and wife executed to the defendant a mortgage of her land in Maine to secure the payment of a note for $2500, but upon which only $2000 was in fact paid. The mortgages of the 19th and 20th

of May were admitted in evidence, notwithstanding that the defendant objected that both of them were distinct transactions, and incompetent evidence of the intent with which the conveyances now in controversy were made and received, and were not conveyances of the husband's estate, but of land of his wife, in which he had only an estate by the curtesy, and to the admission of the mortgage of May 19th upon the further ground that it was not shown that by the law of Maine the husband had any title in his wife's land. But no evidence was offered that in this respect the law of that state differed from the common law and the statutes of Massachusetts, by either of which it was admitted he would have an estate by the curtesy in these lands. The defendant, being afterwards called as a witness in his own behalf, testified on direct examination that he advanced $6500 on the mortgage of May 20th.

The plaintiffs were also allowed, against objection, to introduce evidence tending to show that Boardman, on the 8th and 9th of June 1864, assigned to the defendant, with the intent known to the defendant of preventing attachments, moneys due and growing due to Boardman under a contract with Edward Crane, which money was not sought to be recovered in this action. There was other evidence tending to show that at the time of all the mortgages and conveyances aforesaid Boardman was insolvent and intended to defraud his creditors, and to defeat the operation of the insolvent laws, and that the defendant knew this insolvency and intent. The testimony of the defendant, who was examined as a witness in his own behalf, went to contradict this. There was evidence that Boardman and the defendant on the 19th of May 1864 took the mortgage executed on the 18th to the town clerk's office to be recorded. The jury were instructed that earlier or contemporaneous fraudulent conveyances, which the defendant had reasonable cause to believe to be such, were competent evidence, but that distinct subsequent conveyances were not to charge the defendant with an illegal intent in receiving a particular conveyance; that in this case none of the subsequent conveyances were competent evidence of the intent with which the mortgage of May 12th was made and

received; that mortgages by Boardman of his estate by the cur-tesy in land of his wife were not of so much weight as if the land had been his own, but that the mortgages of May 19th and 20th, if the jury were satisfied that they were made and accepted with intent to put all Boardman's property out of the reach of his creditors, might be considered by the jury in connection with the other evidence in the case in determining the intent of the mortgage of May 18th, and of the subsequent conveyances; that if the defendant had since claimed to have advanced $6500 on a mortgage on which he had actually advanced but $2000, that was competent evidence of the intent with which he took that mortgage; and that a fraudulent intent in making and re-ceiving the assignments of June 8th and 9th was competent evidence to affect conveyances made subsequently, but not those previously made.

The plaintiffs, upon the cross-examination of the defendant, called his attention to, and read to the jury, certain statements as to the time, place and circumstances of making the mort-gages, and paying the consideration thereof, made by him in writing under oath, in the course of his examination by order of the judge of insolvency.

The defendant afterwards offered to put in evidence the whole examination; but it was ruled, against the defendant's objec-tion, that only those answers were admissible as evidence which related to the particular matters inquired of on his cross-exam-ination at the trial; and that the defendant could not put in evidence certain other answers, which were recited at length in the report, but not copied here because the nature of them is sufficiently stated in the opinion.

Instructions were given to the jury as to the fraudulent or illegal intent necessary to be proved in order to avoid a convey-ance, either at common law or under the statutes of the Com-monwealth, to which no exception was taken. The defendant requested that the jury might be instructed that a conveyance by a debtor could be set aside as fraudulent at common law by his creditors only, and not by his assignees in insolvency; at least, as to so much of the property as was disposed of by the

defendant before the institution of proceedings in insolvency. But the jury were instructed otherwise. The defendant also requested that the jury might be instructed that, if any one mortgage was made to secure the payment of a note for a greater sum than was actually advanced upon it at the time of giving it, and was virtually made and received with intent to defeat the operation of the insolvent laws, yet if subsequent ad vances were made upon it with an independent understanding and agreement made between the mortgagor and mortgagee at the time of the subsequent advances, that the note and mortgage should be held as collateral security for these advances, the mortgage would be good at least to the extent of the subsequent advances. But this instruction was refused, and the jury were instructed that any mortgage which was void in part, as contravening the insolvent laws, was wholly void. The defendant had testified that the full consideration of each mortgage of personal property was paid in money at the time of the execution and delivery of the mortgage.

The jury returned a verdict for the plaintiffs for $3700.82, being the value of the personal property included in the mortgage of May 18th, and the subsequent conveyances, excluding that mortgaged on the 12th of May. And the case was reported for the determination of the whole court whether the defendant is entitled to a new trial by reason of any of the above rulings, refusals or instructions.

*A. A. Ranney & W. Colburn,* for the defendant. 1. The testimony of the attorney was improperly admitted. The agent of the client is as much protected as the client himself. 1 Greenl. Ev. § 239. 1 Taylor on Ev. §§ 840, 841, *n. Hoy* v. *Norris,* 13 Gray, 519. *Foster* v. *Hall,* 12 Pick. 93, 99. This protection exists though the client is in no way before the court. 2. The mortgages of the wife's land were distinct and independent transactions. The husband had no attachable interest therein, and evidence of them was improperly admitted. *Silsby* v. *Bullock,* 10 Allen, 94. *Rayner* v. *Whicher,* 6 Allen, 292. 3. A fraudulent claim under a conveyance made subsequently to its execution has no tendency to show an original fraudulent

intent; and a fraudulent conveyance of a later date is not competent to show that a prior conveyance was fraudulent. *Taylor* v. *Robinson*, 2 Allen, 562. *Foster* v. *Hall*, 12 Pick. 89. 4. The defendant was entitled to put in evidence his whole examination taken under the order of the judge of insolvency. 1 Greenl. Ev. §§ 201, 218, 283. *Boardman* v. *Wood*, 3 Verm. 570. The answers which were rejected related to the same matters inquired of. 5. At common law, a creditor could only set aside a fraudulent conveyance of his debtor by attaching the property, and could not sue the fraudulent grantee for its value; and an assignee is in no better position than an individual creditor, as to a conveyance which is not in violation of the insolvent laws. *Lamb* v. *Stone*, 11 Pick. 527. 6. If a mortgage is fraudulent in having been given for too large a sum, subsequent *bona fide* advances upon it will purge the transaction of the fraud, to the extent of such subsequent advances at least. So if fraudulent at first as a preference, it would be good as collateral security for a subsequent distinct *bona fide* advance under an independent agreement. *Rand* v. *Mather*, 11 Cush. 1. *Irvine* v. *Stone*, 6 Cush. 508. *Crowninshield* v. *Kittridge*, 7 Met. 520, and cases cited.

*W. Gaston & A. Churchill*, for the plaintiffs.

HOAR, J. We can find in the numerous points taken by the defendants upon this report no just ground of exception to the rulings, refusals to rule, or instructions, of the judge who presided at the trial.

1. The evidence of the attorney, to the defendant's declarations, was rightly admitted. The defendant was not a client, seeking legal advice or assistance; and there is no evidence that he was employed by Myers to communicate any facts to the attorney.

2. Although the land belonging to the wife was her sole and separate property, in which her husband had no interest except as tenant by the curtesy initiate, and if that interest was one which could not be taken for his debts, the conveyance of it was still a transaction to which the defendant was a party, and in the execution of which the husband joined. If their mutual intent in making it was shown to be fraudulent, it would show

the relation of the parties to each other, and the confidential terms on which they stood. Whether the contemplated fraud was successful in that particular case would not be material. If the intent charged and to be proved were to put all of Boardman's property out of the reach of his creditors, and it were shown that in the belief that he had or might have an interest in certain property, however slight, that property was conveyed by him to the defendant, in a manner indicating a fraudulent purpose to hinder and defeat creditors, it would certainly tend to establish the general fraudulent purpose.

3. There was evidence that the mortgage of the wife's land was made for $6500, while but $2000 had been in fact advanced. The form of the transaction enabled the defendant to claim more than was due upon it. That it was made for that purpose would seem to be shown by the fact that subsequently the full amount of $6500 was claimed by him as due. The jury might well infer from making the mortgage in a form which would admit a fraudulent claim, no honest reason being shown for making it in that form, and the fraudulent claim being afterward made, that it was originally intended for that purpose.

4. The objection that the plaintiffs were wrongly allowed, as evidence to show that the mortgage of May 18th was fraudulent, to put in evidence subsequent mortgages and conveyances from Boardman to the defendant, is not well founded. It has indeed been held in several adjudged cases that, upon the trial of the question whether a particular conveyance was made to defraud creditors, it is not competent to show the acts or declarations of the grantor, after the conveyance, to impair or affect the title of the grantee; and therefore that evidence of subsequent conveyances, alleged to be fraudulent, is not admissible. *Bridge* v. *Eggleston,* 14 Mass. 244. *Foster* v. *Hall,* 12 Pick. 89. *Aldrich* v. *Earle,* 13 Gray, 578. *Taylor* v. *Robinson,* 2 Allen, 562. But in each of these cases the subsequent conveyance was by the alleged fraudulent grantor to a third person, and not to the defendant whose title was in issue in the suit. Here the successive conveyances were to the same grantee; and there is no question whether the grantor should be allowed to affect the title which

he had made, without the participation of the grantee. The acts and declarations of the defendant are of course competent evidence against him, if they have any tendency to prove the fact in controversy. The question is then reduced to this, whether evidence of a subsequent fraudulent act can ever be evidence of a prior fraudulent intent? And we have no doubt that it may be. It will depend of course upon the connection of the facts; whether upon the whole evidence they appear to be parts of one transaction. The position taken by the plaintiffs is, that Boardman and the defendant conspired together to put the whole of Boardman's property out of the reach of his creditors; that the several conveyances, made at short intervals, were all intended as parts of one act, in execution of the conspiracy and general fraudulent intent. It seemed to the judge at the trial that there was evidence to support this hypothesis; and the whole court concur with him in that opinion. If it had appeared that the transaction of the 18th of May was wholly distinct and independent of those which succeeded it, the case would have been different. But there is no positive rule of law which requires that all parts of a negotiation should take place, or that all instruments of conveyance should be executed, on the same day, in order to make them belong to the same transaction. And some of us are inclined to think that the rule was applied too favorably for the defendant, and that the mortgage of the 12th of May was near enough in time, and sufficiently connected in design, to have authorized the jury to infer its character from the acts of the defendant which followed it. *Allison . Matthieu*, 3 Johns. 233.

5. A conveyance fraudulent as to creditors at common law can be set aside by the assignees in insolvency, and the value thereof recovered from the fraudulent grantee, if made within six months prior to the commencement of the insolvent proceedings. It necessarily comes within the provisions of Gen. Sts. *c.* 118, § 91, when the grantee participates in the fraud. As all the conveyances in question were made within that time, the refusal to give the instructions asked on this point was not prejudicial to the defendant. *Clark* v. *Jones*, 5 Allen, 379.

6. The plaintiffs having put in evidence some of the answers of the defendant to interrogatories put to him upon his examinatioa under the proceedings in insolvency, he had the right to read to the jury all his answers in the same examination which pertained to the same subject; and he was permitted to do so. He had not the right to put the whole examination in evidence, because that would be giving his own declarations in evidence in his own favor, upon matters upon which they had not been used against him. But the defendant objects that some answers were excluded which by this rule ought to have been admitted. In looking at the particular questions and answers referred to in support of this objection, it appears that all but one, the 52d, refer to the mortgage upon which the issue was found for the defendant; and that the answer to the 52d had been in substance given in answers to the 46th, 47th and 48th interrogatories which were admitted. The objection is therefore not material.

7. When a conveyance fraudulent as to creditors has been made, if the contract be afterward rescinded, and a new one made which is free from fraud, or in the case of a conveyance which creditors may set aside because it is voluntary and without consideration, if a consideration is afterward paid, this may purge the fraud, and give validity to the transaction. But no authority has been found, and we cannot believe that any exists, for the proposition, that where a contract expressly and intentionally fraudulent has been made, it is possible to give it a partial validity by any subsequent payment or advances in part, without rescinding the whole. If any part of the original purpose is fraudulent, the whole may be avoided, though made upon sufficient consideration. And in like manner if any part of the fraudulent purpose remains, it vitiates the whole. *Thomas* v. *Goodwin*, 12 Mass. 140. *Oriental Bank* v. *Haskins*, 3 Met. 332. *Crowninshield* v. *Kittridge*, 7 Met. 520. *Kimball* v. *Thompson*, 4 Cush. 441. *Denny* v. *Dana*, 2 Cush. 160.

*Judgment for the plaintiffs upon the verdict.*