## GUTERMAN v. ADAMS et al.
### No. 4429.

District Court, D. Massachusetts.

March 9, 1938.

Harold Horvitz and Guterman & Guterman, all of Boston, Mass., for plaintiff.

Claude R. Branch, Charles Ryan, and Choate, Hall & Stewart, all of Boston, Mass., for defendants Adams and Mudge.

F. Delano Putnam, of Boston, Mass., for defendant Oliver E. Williams.

McLELLAN, District Judge.

This is a suit by the trustee in bankruptcy of. Geo. A. Fernald Company to recover certain property or its value, alleged to have been transferred in fraud of creditors under such circumstances that the transfers could have been set aside prior to bankrupt-

cy by a creditor acting under Massachusetts General Laws (Ter.Ed.) c. 109A, the Uniform Fraudulent Conveyance Law as enacted in Massachusetts. The case was heard on three separate defenses, raised by portions of the defendants' answers, presenting questions of res adjudicata and of the effect of certain releases under seal annexed thereto. By stipulation, copies of certain pleadings and decrees in a previous suit between the present plaintiff and (among others) the present defendants, brought in the superior court of the Commonwealth of Massachusetts for the county of Suffolk, are to be considered.

The following facts, which appear either from the pleadings or from the stipulation, indicate the issues in the instant case. The Geo. A. Fernald Company is a corporation organized in 1923 under the laws of the Commonwealth of Massachusetts for the purpose of dealing in securities. On August 24, 1934, this company filed a petition for reorganization under section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. On October 22, 1934, an order of liquidation was entered, and the case referred to the referee. On November 16, 1934, the plaintiff was duly appointed trustee in bankruptcy of the company.

The defendant Adams was an incorporator of the bankrupt corporation, and served as a director and as treasurer from the time of organization until October 29, 1927. The defendant Mudge was also an incorporator, and served as director, vice president, and clerk from the date of incorporation until December 31, 1927.

On December 20, 1935, the plaintiff filed a bill in equity in the superior court of the Commonwealth of Massachusetts for the county of Suffolk, naming five persons, including the present defendants Adams and Mudge, as defendants. The bill alleged that all five persons had been directors and officers of the bankrupt corporation, and sought to hold them responsible for various transactions alleged to be in violation of their fiduciary duties toward the corporation. These transactions were alleged to include improper payment of dividends out of capital; the payment of unjustifiably large salaries to themselves as officers; the extension of improper credit to the defendant Adams, without justification or consideration; the purchase of stock of the bankrupt corporation from the wife of the defendant Adams at an artificially high price, thereby constituting a violation of the fiduciary du-

ties of Adams toward the corporation; the transfer on or about October 31, 1927, of the assets of the Worcester branch of the business to the defendant Adams without sufficient consideration therefor, constituting an improper diversion of the assets of the corporation in violation of the duties of the various defendants; and a similar improper transfer of the assets of the Springfield branch of the business to the defendant Lloyd D. Fernald. It was also alleged that the defendants caused damage generally to the bankrupt corporation by their culpable neglect and mismanagement, thereby rendering bankruptcy inevitable. To this bill, the present defendants Adams and Mudge each filed a plea in bar setting forth a separate release under seal from the bankrupt to each of them, dated April 12, 1928, releasing each defendant "from any and all claims, demands, actions and causes of action and especially on account of any action or right of action which the said Corporation now has or ever had on account of any business transaction, any records of any kind or office furniture or right of action * * *." On June 5, 1936, the superior court entered an interlocutory decree as to each of these defendants sustaining their pleas in bar founded on the releases. These were followed on the same day by the entry of a final decree in favor of each of these defendants. These final decrees have never been vacated, no appeal was taken therefrom, and the time for such appeal has expired.

On February 23, 1937, the present bill of complaint was filed in this court seeking to set aside certain transfers of the bankrupt corporation as fraudulent conveyances. These alleged fraudulent conveyances are based on substantially the same transactions complained of in the superior court bill, including, in part, the improper payment of dividends, improper salaries, improper credit to the defendant Adams, the purchase of stock from the wife of the defendant Adams at an artificial figure, and the transfer to him without adequate consideration of the assets of the Worcester branch of the business.

Three defenses raised by the defendants' answers are here considered. These are:

(1) That the controversy is res adjudicata generally;

(2) That it is res adjudicata that the releases set forth in the state court proceedings are defenses to this suit; and

(3) That the releases given to the defendants and annexed to their answers are

defenses to this suit regardless of whether the question be viewed as res adjudicata or not.

■■ With respect to this final defense, I do not regard the releases here pleaded as constituting in and of themselves a defense to an action brought to set aside a fraudulent conveyance. It is doubtless true that the grantee of a fraudulent conveyance may sometimes purge the fraud. As stated in Lynde v. McGregor, 13 Allen 172, 95 Mass. 172: "When a conveyance fraudulent as to creditors has been made, if the contract be afterward rescinded, and a new one made which is free from fraud, or in the case of a conveyance which creditors may set aside because it is voluntary and without consideration, if a consideration is afterward paid, this may purge the fraud, and give validity to the transaction. But no authority has been found, and we cannot believe that any exists, for the proposition, that where a contract expressly and intentionally fraudulent has been made, it is possible to give it a partial validity by any subsequent payment or advances in part, without rescinding the whole. If any part of the original purpose is fraudulent, the whole may be avoided, though made upon sufficient consideration. And in like manner if any part of the fraudulent purpose remains, it vitiates the whole." The releases in question, however, merely recite that they are given for one dollar and other valuable considerations. This does not amount to a showing, without more, that such releases were given in return for a consideration sufficient to wipe out the wrong done to creditors by the original fraudulent conveyances alleged. In the absence of some such showing, it cannot be said that the rights of creditors are affected by a release to which they were not parties.

■■ The defendants assert as the first of the defenses enumerated above that the whole controversy raised herein has been rendered res adjudicata by the state court proceedings. They contend that if the plaintiff had any further grounds for recovery arising from the transactions involved in the superior court proceedings he should have set them forth at that time, and that the entire question has now been finally settled by the decrees in that suit and the expiration of the time for taking an appeal therefrom. Whether or not this is true depends upon whether both suits were for the same cause of action. As stated by Judge

Bingham in Sutton v. Wentworth, 1 Cir., 247 F. 493, 501: "There is a difference, sometimes overlooked, between the effect of a judgment as a bar to the prosecution of a second action for the same cause and its effect as an estoppel in another suit between the same parties upon a different cause of action. In the former case a judgment on the merits must be pleaded, and is an absolute bar to a subsequent action; it concludes the parties, not only as to every matter which was offered and received to sustain or defeat the suit, but also as to any other matter which might have been offered for that purpose. In the latter case, the judgment in the prior action may be offered in evidence, and operates as an estoppel only as to those matters which were there directly in issue and either admitted by the pleadings or actually tried." To the same effect are Baltimore Steamship Company v. Phillips, 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed. 1069; United States v. Moser, 266 U.S. 236, 45 S.Ct. 66, 69 L.Ed. 262; United Shoe Machinery Corporation v. United States, 258 U.S. 451, 42 S.Ct. 363, 66 L.Ed. 708; Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195.

■ It becomes necessary to decide, therefore, whether a suit by a trustee in bankruptcy to hold certain directors and officers of the bankrupt corporation liable for breaches of their fiduciary duties towards the corporation, and a suit by a trustee in bankruptcy to set aside certain transfers alleged to have been made in fraud of creditors, are suits based on the same cause of action where founded on substantially the same transactions. It seems to me that they cannot be so regarded. The right asserted in the state court was derived from the corporation; as such it was subject to defenses good against the corporation. On the other hand, the present action is based on an alleged wrong done to creditors, and is derived through them. As to such a right, the trustee is clearly not bound by all defenses good against the corporation. See Bush v. Export Storage Company, C.C., 136 F. 918. Regardless of defenses raised, the plaintiff must adduce other and different evidence in support of the present action than would have been required in the state court proceedings. For example, as regards the dividends alleged to have been paid illegally, it would presumably have been sufficient in the state court suit to show that the dividends were not paid out of surplus. Such proof would not of itself

support an action to set aside the payments as having been made in fraud of creditors.

It is argued that in the present case the two suits must be regarded as having been brought for the same cause of action because founded on substantially the same transactions. This fact, standing alone, is not sufficient to show that both suits are for the same cause of action. In Yates v. Utica Bank, 206 U.S. 181, 27 S.Ct. 646, 51 L.Ed. 1015, a plaintiff had brought suit against the directors of a national bank, which was dismissed upon demurrer because the Circuit Court of Appeals determined that the petition stated only a right to recover for violations of the national bank act causing damage to the bank as such, the right to recover for which was an asset of the bank enforceable only by its receiver. This suit was held not to constitute a bar to a suit brought later against the same directors by the same plaintiff to recover for individual loss suffered by the latter, although substantially the same facts were involved in both suits.

The present suit is for a different cause of action from that raised in the proceedings in the superior court of the Commonwealth of Massachusetts, and consequently a general plea of res adjudicata cannot be sustained.

 A more difficult question is raised by the defendants' additional contention that what was actually determined in the state court suit is decisive of the present one. Insofar as it was decided that releases such as those set forth in the present answers and in the defendants' pleas in bar in the Suffolk county suit were validly executed, this fact does not seem to me of significance in this case for the reason, pointed out above, that I do not regard these releases, standing alone, as a good defense to the present action. The defendants' contention, however, goes beyond this.

By way of introduction to a statement of what the defendants contend, it should be stated that the theory on which a settlement with the corporation may deprive creditors of their rights to set aside fraudulent conveyances is that as a result of the settlement the corporation is substantially in as good a position to meet creditors' claims as before the conveyances were made.

It is urged that a judgment for the defendants, on such pleas in bar as were involved in the state court suit, could not have been given unless it appeared that adequate consideration was given for the releases, since otherwise the new directors would also have been acting improperly, with the knowledge of the defendants, in relinquishing wrongfully a corporate right of action for less than it was worth. Without deciding whether such a finding was implicit in the judgment rendered for the defendants on their pleas in bar, it is enough that the question of what amount would constitute a fair settlement of the corporation's claim against the defendants, and the question of what amount would constitute an adequate consideration to cure conveyances originally fraudulent and so terminate the rights of creditors, are not identical. Moreover, if the allegations of the present bill are construed to include allegations of intentional fraud as to some of the transfers, it would appear that nothing short of total rescission or its equivalent would be sufficient to purge the fraud. See Lynde v. McGregor, supra.

The three alleged defenses here presented for determination are not sustained, and the case is to stand for trial upon the remaining issues.