# UNITED SHOE MACHINERY CORPORATION ET AL. *v.* UNITED STATES.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MISSOURI.

No. 119. Argued March 7, 8, 9, 1921; restored to docket for reargument June 6, 1921; reargued January 17, 18, 1922.—Decided April 17, 1922.

1. A presumption of correctness attends the findings of fact made by the trial judge in an equity case after reading the evidence. P. 455.
2. In a suit under the Clayton Act to enjoin the use of restrictive covenants in leases of machinery, inserted for the benefit of the lessor, the lessees are *held* not indispensable parties. P. 456.

3. The appellant corporation controlled a large part of the trade of supplying certain classes of machinery used in the United States in the manufacture of shoes, which it furnished to the manufacturer under a system of leases in which were restrictive clauses providing, (1) that leased machines performing certain operations should not be used on shoes upon which certain other operations had not been performed by machines of the lessor; (2) that as to certain kinds, if the lessor's machines were not used exclusively, the leases should be forfeitable; (3) for purchase of supplies exclusively from the lessor; (4) that leased insole machines should only be used on shoes upon which certain other operations were done by lessor's machines; (5) that failure of the lessee to take additional machines of certain kinds from the lessor would forfeit the right to retain machines already leased; (6) for payment of a royalty on shoes operated upon by competing machines; (7) for a lower royalty where the lessee agreed not to use certain machines on shoes lasted on machines not leased from the lessor: the lessor reserving the right to cancel any lease for breach of any provision in that or any other lease or license agreement between the parties, irrespective of previous breaches, unnoticed, waived or condoned. *Held,* That, although there was no specific agreement not to use machinery of a competitor, the practical effect of these restrictive provisions, thus tied together, was to prevent such use and necessarily to lessen competition and to tend to create monopoly, in violation of § 3 of the Clayton Act. P. 456.

4. A decree is an estoppel between the same parties in a second suit only when rendered on the same cause of action; or where, the causes of action being different, a point or issue determined in the first suit is sought to be relitigated in the second. P. 458.

5. The effect of a former decree as an estoppel is ascertained from the issues made by the pleadings and the questions essential to the decision as shown by the record, and not from isolated expressions of the court's opinion. P. 460.

6. This being a suit to enjoin the use of restrictions in leases of machinery as violating § 3 of the Clayton Act, which expressly applies to patented as well as unpatented machines and prohibits leases the effect of which "may" be substantially to lessen competition or tend to create monopoly, the Government is not estopped by the adverse decree, in its former suit (247 U. S. 32) seeking to dissolve the defendant corporation as a combination and monopoly forbidden by the Sherman Act, wherein the leases here in controversy also were attacked as contracts violating that act and were held not so

in view of the patent law, but where their validity under the Clayton Act was not and could not have been involved.   P. 459.

7. A patent secures the right to exclude others from making, using or vending the thing patented without the permission of the patent owner, but does not exempt him from regulations consistent with those rights, made by Congress in the public interest, forbidding agreements which may lessen competition or build up monopoly in interstate trade.   P. 463.

8. Section 3 of the Clayton Act is consistent with patent rights antedating the act and does not deprive their owners of property without due process of law.   P. 462.

9. In a suit to enjoin use of lease provisions found violative of the Clayton Act, *held* not a defense that an alternative form of lease, claimed to be unobjectionable, was offered the lessees or that the lessor after enactment of the statute adopted a form of temporary agreement not containing the clauses in controversy.   P. 464.

10. Leases of machines made in connection with and as a part of a transaction involving shipment of the machines from one State to the user in another, are made in interstate commerce and subject to the control of Congress exerted in § 3 of the Clayton Act.   P. 465.

264 Fed. 138, affirmed.

APPEAL from a decree of the District Court enjoining the appellants from the use of certain restrictive clauses, found violative of § 3 of the Act of October 15, 1914, c. 323, 38 Stat. 730, in leases of shoe machinery in interstate commerce, executed since the passage of that act, or to be made in the future.

*Mr. Charles F. Choate, Jr.,* and *Mr. Frederick P. Fish,* with whom *Mr. Malcolm Donald* and *Mr. Henry W. Dunn* were on the briefs, for appellants.[1]

---

[1] At the former hearing the case was argued for the appellants by *Messrs. Charles F. Choate, Jr., Frederick P. Fish* and *Cordenio A. Severance,* with *Messrs. Malcolm Donald, Frank W. Knowlton, Henry W. Dunn* and *James Garfield* on the briefs, and for the United States by *Messrs. La Rue Brown, Leo A. Rogers* and *Elias Field,* with *Solicitor General Frierson* on the brief.

The arguments can not be adequately represented within the small space allowable here.

*Mr. La Rue Brown* and *Mr. Elias Field,* Special Assistants to the Attorney General, with whom *Mr. Solicitor General Beck* was on the brief, for the United States.

MR. JUSTICE DAY delivered the opinion of the court.

This suit was brought by the United States against the defendants, United Shoe Machinery Company (of Maine), United Shoe Machinery Corporation, United Shoe Machinery Company (of New Jersey), and the officers and directors of these corporations, under the provisions of the Clayton Act of October 15, 1914, c. 323, 38 Stat. 731, 736, to enjoin them from making leases containing certain clauses, terms and conditions alleged to be violative of the act. Issues were made up, testimony taken, and a decree granted by the District Court enjoining the use of certain clauses in the leases. 264 Fed. 138. From that decree the present appeal was prosecuted to this court.

The record embraces twenty-seven volumes of printed matter and four volumes of exhibits. The summary of testimony compiled by the defendants contains more than one thousand pages. Much of it has but little bearing on the real issues to be decided, and so much as was essential might well have been embraced within a much narrower compass than is contained in the voluminous record now before us.

Section 3 of the Clayton Act, so far as pertinent, makes it unlawful for persons engaged in interstate commerce in the course of such commerce to lease machinery, supplies or other commodities, whether patented or unpatented, for use, consumption or resale within the United States, or to fix a price therefor, or to discount from, or rebate upon, such price upon the condition, agreement or understanding that the lessee thereof shall not use or deal in the machinery, supplies or other commodities of the competitor or competitors of the lessor, where the effect

of such lease, agreement or understanding may be to substantially lessen competition or tend to create a monopoly.

The trial judge states that he took the time necessary to read and examine this voluminous record, and from it in the course of his opinion he makes certain findings of fact. These findings are entitled to the presumption of correctness which is given to the conclusions of a chancellor reached upon consideration of conflicting evidence, and we may add that in this case the opinion gives evidence of careful and painstaking research.

Our own examination of the testimony gives little occasion to modify the findings of fact made by the District Court. The record discloses that the United Shoe Machinery Corporation, hereinafter called the United Company, controlled a very large portion of the business of supplying shoe machinery of the classes involved in this case. The court below found that it controlled more than 95% of such business in the United States. Whether this finding is precisely correct it is immaterial to inquire. It is evident from this record that the United Company occupies a dominant position in the production of such machinery and makes and supplies throughout the United States a very large percentage of such machinery used by manufacturers.

It may be conceded at the outset, and was so found in the court below, that the company did not act oppressively in the enforcement of the forfeiture clauses of the leases. It is established that it furnishes machines of excellent quality; that it renders valuable services in the installation of machines, instructions to operators, promptness in furnishing machines when desired by manufacturers, and is expeditious in making repairs and replacements when necessary so to do. The machines of the United Company are protected by patents granted prior to the passage of the Clayton Act, and the validity of none of them is called in question here.

It is contended that the suit must fail for want of necessary parties in as much as the lessees were not brought into it; that they were necessary parties because their rights were necessarily adjudicated in enjoining the enforcement of the contracts involved. But we agree with the District Court that the lessees were not indispensable or even necessary parties. The relation of indispensable parties to the suit must be such that no decree can be entered in the case which will do justice to the parties before the court without injuriously affecting the rights of absent parties. 1 Street's Equity Practice, § 519, quoted with approval in *Waterman* v. *Canal-Louisiana Bank Co.*, 215 U. S. 33, in which case the former adjudications in this court are cited and considered. The covenants enjoined were inserted for the benefit of the lessor, and were of such restrictive character that no right of the lessee could be injuriously affected by the injunction which was prayed in the case. We are of opinion that their presence was not necessary to a decision.

Turning to the decree, it will be found that the court enjoined the use of (1) the restricted use clause, which provides that the leased machinery shall not, nor shall any part thereof, be used upon shoes, etc., or portions, thereof, upon which certain other operations have not been performed on other machines of the defendants; (2) the exclusive use clause, which provides that if the lessee fails to use exclusively machinery of certain kinds made by the lessor, the lessor shall have the right to cancel the right to use all such machinery so leased; (3) the supplies clause, which provides that the lessee shall purchase supplies exclusively from the lessor; (4) the patent insole clause, which provides that the lessee shall only use machinery leased on shoes which have had certain other operations performed upon them by the defendants' machines; (5) the additional machinery clause, which provides that the lessee shall take all additional machinery for

certain kinds of work from the lessor or lose his right to retain the machines which he has already leased; (6) the factory output clause, which requires the payment of a royalty on shoes operated upon by machines made by competitors; (7) the discriminatory royalty clause, providing lower royalty for lessees who agree not to use certain machinery on shoes lasted on machines other than those leased from the lessor. The defendant's restrictive form of leases embraces the right of the lessor to cancel a lease for the breach of a provision in such lease, or in any other lease or license agreement between the lessor and the lessee. The lessor in such case is given the right, by notice in writing to the lessee, to terminate any and all leases or licenses then in force to use the machinery and this notwithstanding previous breaches or defaults may have been unnoticed, waived, or condoned by or on behalf of the lessor. The District Court held that the United Company had the right to cancel a lease for a violation of the terms of the particular lease, but could not, without violating the act reserve the right to cancel a lease because the lessee had violated the terms of some other lease. This part of the decree must be read in the light of the circumstances shown as to the necessity of procuring shoe machinery from the United Company, and the danger of a lessee losing his ability to continue business by a forfeiture incurred from the breach of a single covenant in one lease.

While the clauses enjoined do not contain specific agreements not to use the machinery of a competitor of the lessor, the practical effect of these drastic provisions is to prevent such use. We can entertain no doubt that such provisions as were enjoined are embraced in the broad terms of the Clayton Act which cover all conditions, agreements or understandings of this nature. That such restrictive and tying agreements must necessarily lessen competition and tend to monopoly is, we believe, equally apparent. When it is considered that the United Com-

pany occupies a dominating position in supplying shoe machinery of the classes involved, these covenants signed by the lessee and binding upon him effectually prevent him from acquiring the machinery of a competitor of the lessor except at the risk of forfeiting the right to use the machines furnished by the United Company which may be absolutely essential to the prosecution and success of his business.

This system of "tying" restrictions is quite as effective as express covenants could be and practically compels the use of the machinery of the lessor except upon risks which manufacturers will not willingly incur. It is true that the record discloses that in many instances these provisions were not enforced. In some cases they were. In frequent instances it was sufficient to call the attention of the lessee to the fact that they were contained in the lease to insure a compliance with their provisions. The power to enforce them is omnipresent and their restraining influence constantly operates upon competitors and lessees. The fact that the lessor in many instances forebore to enforce these provisions does not make them any less agreements within the condemnation of the Clayton Act.

It is contended that the decree in favor of the defendants affirmed in the former suit of the Government under the Sherman Act, 247 U. S. 32, between the same parties, is *res judicata* of the issues in the present case.

Perhaps the leading case in this court upon the subject of estoppel by former judgment is *Cromwell* v. *County of Sac,* 94 U. S. 351, 352, in which this court, speaking by Mr. Justice Field, laid down the general rule of law, which has been followed in subsequent cases:

". . . there is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action. In the

former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action, . . . . concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. . . . . But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined."

In other words, to determine the effect of a former judgment pleaded as an estoppel, two questions must be answered: (1) Was the former judgment rendered on the same cause of action? (2) If not, was some matter litigated in the former suit determinative of the matter in controversy in the second suit? To answer these questions we must look to the pleadings making the issues, and examine the record to determine the questions essential to the decision of the former controversy.

The Sherman Act suit had for its object the dissolution of the United Company, which had been formed by the union of other shoe machinery companies. It also attacked and sought to enjoin the use of the restrictive and tying clauses contained in the leases as being in themselves contracts in violation of the Sherman Act. The Sherman Act and the Clayton Act provide different tests of liability. This was determined in the recent case of *Standard Fashion Co.* v. *Magrane-Houston Co., ante,*

346. In that case we pointed out that the Clayton Act was intended to supplement the Sherman Act, and within its limited sphere established its own rule. Under the Sherman Act, as interpreted by this court before the passage of the Clayton Act, contracts were prohibited which unduly restrain the natural flow of interstate commerce, or which materially interrupt the free exercise of competition in the channels of interstate trade. In the second section monopolization or attempts to monopolize interstate trade were condemned. The Clayton Act (§ 3) prohibits contracts of sale, or leases made upon the condition, agreement or understanding that the purchaser or lessee shall not deal in or use the goods of a competitor of the seller or lessor where the effect of such lease, sale, or contract, or such condition, agreement or understanding " may " be to substantially lessen competition or tend to create monopoly. The cause of action is therefore not the same.

That the leases were attacked under the former bill as violative of the Sherman Act is true, but they were sustained as valid and binding agreements within the rights of holders of patents. The Clayton Act specifically applies to goods, wares, machinery, etc., whether " *patented or unpatented.*" This provision was inserted in the Clayton Act with the express purpose of preventing rights granted by letters patent from securing immunity from the inhibitions of the act. The determination of the questions now raised under the Clayton Act was not essential to the former decision. The defendants in their argument seize upon isolated passages in the opinion of the court in the former case, and contend that they are decisive here. But the effect of the former judgment as an estoppel is not to be thus determined. *Vicksburg* v. *Henson,* 231 U. S. 259, 269, and cases therein cited. In the Sherman Act case the issues were clearly stated in the prevailing opinion of this court (247 U. S. 35, 38) : " The

charge of the bill is that defendants, not being satisfied with the monopoly of their patents and determined to extend it, conceived the idea of acquiring the ownership or control of all concerns engaged in the manufacture of all kinds of shoe machinery. This purpose was achieved, it is charged, and a monopoly acquired, and commerce, interstate and foreign, restrained by the union of competing companies and the acquisition of others. And that leases were exacted which completed and assured the control and monopoly thus acquired. . . .

" There are two accusations against the defendants. One is that at the very outset they combined competing companies and subsequently acquired others, § 1 of the Act of 1890 being thereby offended. The other is a monopolization of the trade in violation of § 2 of that act. And it is charged, as we have said, that certain leases and license agreements are the instruments which consummate both offenses."

After disposing of the charge adversely to the Government's contention that the union of the preëxisting companies, constituting the United Company, was a combination in restraint of trade, the court passed to a consideration of the leases and said (pp. 56, 57):

" There was complaint of them and the Government attacks them. . . . To the attacks of the Government the defendants reply that the leases are the exercise of their right as patentees and if there is monopoly in them it is the monopoly of the right. . . . We must not overestimate the right or give it a sinister effect—permit it to be the means, to use the words of the Government, ' to the building up and intrenchment ' of an ' illegal monopoly.'
. . .

" Of course, there is restraint in a patent. Its strength is in the restraint, the right to exclude others from the use of the invention, absolutely or on the terms the patentee chooses to impose. This strength is the compensation

which the law grants for the exercise of invention. Its exertion within the field covered by the patent law is not an offense against the Anti-Trust Act. In other circumstances it may be, as in *Standard Sanitary Mfg. Co.* v. *United States*, 226 U. S. 20, to which case that at bar has no resemblance.

"The question, then, is, Was the patent right lawfully exerted in the leases? Were they anything more than the exercise of the patent monopoly?"

This question the court proceeded to answer in the negative.

The issue whether the restrictive clauses were valid in view of the provision of the Clayton Act concerning machinery patented or unpatented was not and could not have been involved or decided in the former suit. It is true that the court speaks of the excellence and efficiency of the United Company's machinery as a sufficient inducement for its installation by the lessees, and, we may add that there is much testimony in the record tending to show that it was the excellence of the United Company's machinery and the efficiency of its service which induced lessees to acquire its machinery, but these considerations are apart from the pertinent issues which here confront us. No matter how good the machines of the United Company may be, or how efficient its service, it is not at liberty to lease its machines upon conditions prohibited by a valid law of the United States. Congress has undertaken to deny the protection of patent rights to such covenants as come within the terms of the Clayton Act, and if the statute is constitutional, the sole duty of the court is to enforce it in accordance with its terms.

It is contended that the act is an unconstitutional limitation upon the rights secured to a patentee under the laws of the United States, and that it takes away from the patentees without due process of law property secured to them by the grant of the patent. The solution of this

contention depends upon the nature and extent of the rights secured under the grant of a patent.

From an early day it has been held by this court that the franchise secured by a patent consists only in the right to exclude others from making, using, or vending the thing patented without the permission of the patentee. *Bloomer* v. *McQuewan*, 14 How. 539. This definition of the rights of the patentee has been the subject of frequent recent decisions of this court, and has been approved and applied in *Bauer* v. *O'Donnell*, 229 U. S. 1; *Straus* v. *Victor Talking Machine Co.*, 243 U. S. 490; *Motion Picture Patents Co.* v. *Universal Film Manufacturing Co.*, 243 U. S. 502; *Boston Store* v. *American Graphophone Co.*, 246 U. S. 8. The subject was given full consideration in *Motion Picture Patents Co.* v. *Universal Film Manufacturing Co., supra,* in which the former decision of this court, *Henry* v. *Dick Co.*, 224 U. S. 1, holding that a mimeograph made under letters patent might be sold with a license agreement limiting its use to certain unpatented articles, was specifically overruled, and it was held that the patentee received from the law no more than the exclusive right to make, use and sell the invention. Undoubtedly the patentee has the right to grant the use of the rights or privileges conferred by his patent to others by making licenses and agreements with them which are not in themselves unlawful, but the right to make regulation in the public interest under the police power of the States or in the exertion of the authority of Congress over matters within its constitutional power is controlled by general principles of law, and the patent right confers no privilege to make contracts in themselves illegal, and certainly not to make those directly violative of valid statutes of the United States. It was held by this court in *Standard Sanitary Manufacturing Co.* v. *United States*, 226 U. S. 20, that the rights secured by a patent do not protect

the making of contracts in restraint of trade, or those which tend to monopolize trade or commerce in violation of the Sherman Act. That principle was followed with approval when applied to rights secured under the copyright laws of the United States. *Straus v. American Publishers' Association,* 231 U. S. 222. The same conclusion was reached in a well considered opinion in the Supreme Judicial Court of Massachusetts involving a state enactment. *Opinion of the Justices,* 193 Mass. 605. The same principle applies to the Clayton Act. The patent grant does not limit the right of Congress to enact legislation not interfering with the legitimate rights secured by the patent but prohibiting in the public interest the making of agreements which may lessen competition and build up monopoly.

It is further insisted that the suit must fail because the parties were offered an alternative lease alleged to be free from the objectionable conditions complained of. But this lease was only granted upon the lessee making an initial payment in cash instead of paying the lessor royalties throughout the term. There is some conflict in the testimony as to whether the effect of such requirement was so onerous as to compel the lessee to choose the restricted form of leases. The issue involved here is whether leases with the restricted clauses in them, the enforcement of which has been enjoined by the District Court, were such as to make them violative of the provisions of the Clayton Act. The fact that a form of lease was offered which is not the subject of controversy is not a justification of the use of clauses in other leases which we find to be violative of the act.

The defendants contend that the form of lease which they have adopted since the Clayton Act became effective is free from the restrictive and tying clauses, and is, therefore, unobjectionable, and hence no injunction should issue. These leases are terminable upon thirty

days notice, and are denominated temporary loan agreements. They were evidently framed in view of the Clayton Act, and litigation likely to arise over the former leases in view of that enactment. The court below so found, and expressed the opinion that should the defendants' contention be sustained, and the conditions in controversy be held legitimate, leases containing them would again be insisted upon. The earnestness and zeal with which the right to use these clauses has been insisted upon throughout, confirms the conclusion of the trial judge. The fate of these substituted forms of leases evidently depends upon the outcome of this suit.

.It is insisted that the leases in controversy were not made in the course of interstate commerce, and, therefore, cannot be embraced within the terms of the Clayton Act. It is provided in the decree that it shall apply to all leases covering shoe machinery shipped from one State to the user or factory for use in another State in the course of or as a part of the transaction between the lessor and the lessee, resulting in the making of the lease. It is true that the mere making of the lease of the machines is not of itself interstate commerce. But where, connected with the making of such lease, a movement of goods in interstate commerce is required, we have no doubt of the authority and purpose of Congress to control the making of such leases by the enactment of the statute before us.

Other matters are urged, but we have noticed those deemed necessary to a decision of the case. We find no error in the decree of the court below, and the same is

*Affirmed.*

MR. JUSTICE MCKENNA dissents.

MR. JUSTICE BRANDEIS took no part in the consideration or decision of this case.