**BARTLESVILLE ZINC CO. et al. v. INDIAN TERRITORY ILLUMINATING OIL CO.**

(District Court, D. New Jersey. August 2, 1926.)

**1. Equity ⬅441—Application at foot of decree not equivalent to supplemental bill, and may relate only to matters adjudicated.**

Under reservation in a decree of jurisdiction for its enforcement, with leave to parties to apply at its foot for orders for that purpose, a motion therefor is not the equivalent of an ancillary or supplemental bill, and does not draw to it any matters not adjudicated by the decree.

**2. Equity ⬅437—Motion at foot of decree denied so far as related to a matter not determined by the decree.**

A motion for injunctional relief, made at the foot of a decree, denied so far as it sought enforcement of a provision of the contract in suit which was not construed, nor the rights of the parties thereunder determined by the decree.

In Equity. Suit by the Bartlesville Zinc Company and another against the Indian Territory Illuminating Oil Company. On motion by complainants for injunction. Granted in part, and denied in part.

See, also, 299 F. 375, 288 F. 273.

Joseph B. Cotton, of New York City (Roy F. Wrigley and Samuel Brenner, both of New York City, and Algernon T. Sweeney, of Newark, N. J., of counsel), for plaintiffs.

John Milton, of Jersey City, N. J. (C. A. Frueauff and W. B. Robinson, both of New York City, R. L. Gordon, of Bartlesville, Okl., and J. A. Burdeau, of New York City, of counsel), for defendant.

RELLSTAB, District Judge. [1] In the final decree entered in this case on February 24, 1922, it is provided that, for the purpose of enforcing the provisions thereof, jurisdiction of the cause be retained by the court, and that either party thereto, upon notice, might apply at the foot of the decree "for such other and further orders as may be necessary for such purpose." Such a motion is not the equivalent of an ancillary or supplemental bill, and does not draw to it any matters not adjudicated by the decree.

What is res judicata between the parties is the controlling question on this motion. The answer will be found by examining the issues made by the pleadings, the final decree, and by ascertaining the questions essential to the decision leading to such decree. United Shoe Mach. Co. v. United States (April 17, 1922) 258 U. S. 451, 42 S. Ct. 363, 66 L. Ed. 708.

The suit was based on a contract made between the plaintiffs, in the name of the Smelter Gas Company, and the defendant, dated August 31, 1912, which contract is called the smelter gas contract. The contract related to the sale of natural gas to be obtained from the defendant's wells, drilled and to be drilled on portions of its oil and gas mining leaseholds situated in Oklahoma. It was to run for the remaining period of the defendant's lease, dated March 16, 1896 (called the original Foster lease), and for

the period of any renewal or extension of said lease. The gas was to be delivered to pipe lines of the Smelter Gas Company, to be connected with the defendant's wells, and was for the use of certain smelters owned and operated by the plaintiffs, located near Bartlesville, Okl. The parties entered upon the performance of the contract, and for a considerable time gas was sold and delivered in accordance with its terms, without friction between them.

At the expiration of the Foster lease, defendant obtained a new lease, dated April 17, 1916, called the Indian lease. Whether this was a renewal or extension of the original Foster lease became a matter of serious contention between the parties, and resulted in this suit.

The pleadings are voluminous, but, in introducing the subject-matter of the present controversy the following summary is sufficient: The bill of complaint alleged that the Indian lease was a renewal of the original Foster lease; that the defendant refused to so regard it, had threatened to disconnect the plaintiffs' pipe lines from its said wells, and was about to cut off plaintiffs' supply of gas. It prayed for an order enjoining defendant and its agents, etc., from (a) disconnecting its wells from plaintiffs' pipe lines; (b) ceasing to furnish gas to plaintiffs through such pipe lines for the operation of its smelters; (c) interfering with the connection of plaintiffs' pipe lines with any new gas wells heretofore or hereafter brought in or developed in the territory applicable to plaintiffs under the smelter gas contract; (d) selling or turning over gas therefrom to parties other than plaintiff; (e) in any other manner directly or indirectly interfering with the furnishing of gas by the defendant to plaintiffs in accordance with the terms of the smelter gas contract.

Plaintiffs also prayed the court to decree the specific performance by defendant of the contract, and that defendant be ordered to continue to make delivery of gas from its wells, and from gas owned or acquired by it in the territory covered by the contract, in the quantities required by plaintiffs under said contract. It also prayed for other and further relief as seemed due and proper.

In the defendant's answer, it is alleged that on March 16, 1916, all its rights, interests and property in the said oil and gas mining leases expired and were not extended or renewed, and that the smelter gas contract, by its own terms, expired on that date; that it received a new gas lease (Indian lease) covering less acreage, containing terms and conditions entirely different from those governing the gas rights that it lost on that date, and that such lease was in no sense a renewal or extension of the earlier lease; that, because of the refusal of the Smelter Gas Company to pay an increased price for gas demanded by defendant, it would have shut off the supplies of gas to said company, except for various injunction orders issued out of the state court of Oklahoma and this court.

In its fifth affirmative defense the defendant set out paragraphs 8 and 9 of the smelter gas contract, paragraph 21 of the new gas lease, and paragraphs 21 and 23 of the government's rules and regulations governing conditions, rights, and operations under the new gas lease. Paragraph 8 assigned to the Smelter Gas Company the defendant's rights of way for pipe lines and roadways under its original Foster lease, for the purpose of carrying the contract into effect. Paragraph 9 authorized the Smelter Gas Company to advance money to the defendant for the purpose of drilling wells for natural gas on its leasehold, and provided that, on the defendant's refusal to drill wells with the money so advanced, the Smelter Gas Company should have the right to drill upon said territory and possess the same rights and privileges under said lease as were possessed by the defendant, for the exclusive purpose of providing gas to be sold and delivered under the contract.

Paragraph 21 of the new gas lease prohibited an assignment of the lease or of any interest therein without the approval of the Secretary of the Interior, and paragraph 21 of the rules, etc., authorized the subletting, transferring, or assigning of approved leases, or any interest therein, but only with the consent and approval of the Secretary of the Interior, and paragraph 23 forbade any operations upon any tract of land until a lease covering such tract should have been approved by the Secretary of the Interior.

Based on such paragraphs, the defendant alleged that the smelter gas contract had never been submitted to or approved by the Department of the Interior, and, that, while under the new gas lease defendant could contract for the sale of gas for smelter purposes without departmental approval, such permission was confined to the exclusive sale contracts, which did not violate the lease provisions and rules and regulations in reference to assignment of any interest in such lease; that paragraphs 8 and 9 of the smelter gas contract were null and void and therefore rendered the contract in its entirety null and void, and that plaintiffs could

not maintain an action for affirmative relief, and that, even if this court should find that said contract was renewed or extended, it could not be specifically enforced.

The final decree determined that the Indian lease was a renewal and extension of the original Foster lease, within the meaning of the Smelter gas contract, and that such contract was in full force and effect. It ordered that, so long as plaintiffs and its agent, the Smelter Gas Company, performed the obligations imposed upon them by the smelter gas contract, the defendant should be permanently enjoined (a) from disconnecting any of the natural gas wells owned or controlled by it within a designated territory, called the smelter primary zone, from the plaintiffs' pipe lines with which said gas wells were and might thereafter be connected; (b) from ceasing to furnish natural gas from said wells to the plaintiffs through said pipe lines, and any extensions thereof; (c) from interfering with the furnishing of natural gas by the defendant to the plaintiffs under and in accordance with the smelter gas contract. The decree also ordered that plaintiffs be permitted to connect their pipe lines or extensions thereof with any other existings wells of the defendant or new wells thereafter to be owned or controlled by it within said zone, and that the defendant furnish natural gas to plaintiffs to the extent and in the manner specified in the smelter gas contract, and at the prices, terms, and limitations stated in the decree.

[2] The present motion is to restrain the defendant from claiming (1) that plaintiffs' alleged right to enter and drill wells on land covered by the Indian gas lease obtained by the defendant from the Osage Tribe of Indians, dated April 17, 1916, is an interest in said lease within the meaning thereof, or of the regulations of the Department of the Interior of the United States approved August 26, 1915; (2) that the smelter gas contract, including section 9 thereof, has never been approved by the Secretary of the Interior, and is therefore void and ineffective to vest in plaintiffs the right to enter upon the leased land and drill for gas as provided in the ninth paragraph thereof; (3) that all the terms of the smelter gas contract, including paragraph 9 thereof, have not been sustained by this court; (4) that the plaintiffs have no right to drill on the territory covered by the Indian gas lease of April 17, 1916; (5) that this court considered only those portions of the smelter gas contract that dealt with the sale and delivery of gas; (6) that this court erroneously determined that the Indian gas lease was, within the meaning of those portions of the smelter gas contract which dealt with the sale and delivery of gas, an extension or renewal of the original Foster lease; (7) that the final decrees of this court are not binding on the defendant so far as concerns the ninth paragraph of the smelter gas contract; (8) that the Interior Department of the United States should disapprove or refuse to recognize paragraph 9 of the smelter gas contract.

The motion also seeks to restrain the defendant from attempting to secure from the Interior Department, the Secretary of the Interior, the Commissioner of Indian Affairs, or the Superintendent of the Osage Indian Agency, any hearing, action, or decision in respect of the existence, validity, or scope of the smelter gas contract or paragraph 9 thereof.

Defendant opposes this motion, on the grounds (a) that the relief sought is not in aid of any provisions of the decree, but is a new and additional relief, not founded on any of the issues decided in the cause; (b) that the relief asked is to restrain defendant from claiming that paragraph 9 of the smelter gas contract has not been sustained in this cause in its entirety, or that plaintiffs did not have by the said decree the right to enter upon defendant's leasehold to drill for and take natural gas to the extent that plaintiffs required the same within the limits of that contract; that to grant such injunction would adjudicate in the plaintiffs' rights, which the Circuit Court of Appeals for this Circuit held were not within the issues and were not decided, and could be decided only in new litigation; (c) that the injunction would prevent defendant from litigating the very questions which the said Circuit Court of Appeals held could be decided only in further litigation; (d) that, as the term in which the final decree was entered had expired, this court was without jurisdiction to add to, enlarge, or modify the decree; (e) that the relief sought would be contrary to public policy, as it would in effect prevent the Department of the Interior from obtaining information in the defendant's possession which would be necessary for such Department to properly determine any matter pending or to be brought before it in connection with its administration on behalf of the Osage Indians, of defendant's said leasehold, and would be interfering with the functioning of a co-ordinate department of the government.

I am of the opinion that these objections are sound and call for the denying of the

plaintiffs' motion so far as it relates to paragraph 9 of the contract.

True, the validity of this paragraph was put in issue by the pleadings, but the court did not find it necessary in reaching its decision to pass upon that issue. The cause of action alleged in the bill of complaint was not based on any violation of any supposed rights the plaintiffs had under this paragraph.

The determination by defendant not to furnish gas from its existing wells to plaintiffs, unless they paid an increased price over that authorized in the smelter gas contract, its stated intention to disconnect its wells from the plaintiffs' pipe lines and cease to furnish them with gas, and its refusal to permit plaintiffs to connect its pipe lines with new wells which had been developed in the gas zone covered by such contract, and not any invasion of plaintiffs' supposed rights under paragraph 9 to drill wells in case the defendant refused to so drill after the moneys had been advanced by the plaintiffs for that purpose, were the alleged wrongful acts and injuries complained of by the plaintiffs, and constituted their cause of action.

That controversy involved the existence of the contract. As noted, the defendant contended that it had terminated on March 16, 1916, the date of the expiration of the "Foster lease" (a renewal of the "original Foster lease"). The plaintiffs contended to the contrary, and insisted that it continued in force because by its express terms it was to run, not only for the remaining period of the Foster lease, but also for the period of any renewal or extension of said lease, and that the new lease obtained by the defendant (Indian lease), dated April 17, 1917, covering the period from March 17, 1916, to April 8, 1931, was a renewal or extension of the original Foster lease, within the meaning of the smelter gas contract.

There is nothing in the final decree that deals with the alleged right of plaintiffs to drill wells for natural gas, as authorized by paragraph 9, and a reading of the opinions rendered by the trial court and the Circuit Court of Appeals (288 F. 273) shows that the question of such a right was not considered or decided.

In Judge Lynch's opinion granting the final decree, he refers to his memorandum granting a preliminary restraint, and says that therein he "stated that the principal issue seemed to be whether there is in existence a contract requiring the defendant to supply gas fuel to the plants of the plaintiffs at Bartlesville, Okl." Continuing, he said: "The defendant demands, under threat of shutting off plaintiffs' gas supply, a higher rate per thousand cubic feet of gas furnished than is provided for in the contract; hence this suit. Plaintiffs seek the specific performance of their alleged contract. * * * If there is a contract in existence by reason of a legal renewal of a former contract, the relief prayed for by the plaintiffs should be granted." He concluded "that the new Indian lease of April 17, 1916, obtained by the defendant, in law worked a legal renewal and extension of the smelter gas contract."

Both parties appealed from the decree rendered—the defendant from the whole decree; the plaintiffs from a single provision affecting the performance of the sustained contract. On the defendant's appeal, the Circuit Court of Appeals reached the same conclusion as that of the trial court, and adopted Judge Lynch's opinion as its own. On the plaintiffs' appeal the appellate court directed that the decree be modified by eliminating therefrom a provision, the effect of which would have been to require the plaintiffs to connect its pipe lines with all wells, old and new, wheresoever located, in the smelter primary zone, and to take from each well a proportionate part of the contract quantity of gas there available. So modified, the decree of the District Court was affirmed.

At the time the District Court modified the decree, the defendant submitted a proviso which the court refused to insert. The defendant thereupon took an appeal from the decree as modified. This appeal was dismissed. In the Circuit Court of Appeals' opinion sustaining the modified decree (299 F. 375), it is said that the defendant by this proviso (there set out in full) sought to secure an interpretation of section 9 of the smelter gas contract. With respect to this purpose, after quoting the section in full, it said (at page 377):

"We are of opinion that the court below was not in error in refusing to incorporate in its decree a construction of the section of the contract quoted, because the construction of it and the power granted therein was never before either the District Court or this court, except collaterally and in the way of argument. This is established by an examination of the pleadings. The defendant below, the oil company, filed no cross-bill. * * * That section 9 of the gas contract was not the subject of the court's action, except as a part of the whole contract, which was held to be valid and in existence. The

plaintiff requested no decree fixing its rights and powers under that section, and the court made none, and, as stated before, the defendant filed no cross-bill. At that time the right of the plaintiff to demand that defendant drill, and, in case of default to itself drill, was not the subject of the litigation. The plaintiff, at that time, was seeking to prevent the defendant from entirely cutting off its gas supply, and the defendant was seeking to overturn the entire contract, and was not endeavoring to procure any interpretation of a single provision of the agreement."

On the subject of the appellate court's view as to the need of a modified decree, it said (at page 378):

"No modification was ordered which either prohibited or authorized the plaintiff to advance money for the cost thereof, and then either direct the defendant to drill gas wells, or itself drill under the provisions of section 9 of the contract. * * * If the plaintiff has the right to demand that defendant drill additional gas wells in the smelter primary zone upon the advancement of the cost, and upon default of the defendant is entitled to go upon the zone and itself drill, it derives that right, not from any language of the lower court in the modified decree, but from section 9 of the contract."

From the defendant's letter to Hon. J. George Wright, Superintendent Osage Indian Agency, dated February 3, 1921 (Exhibit F of the plaintiffs' moving papers), it is apparent that the defendant is seeking the Interior Department's disapproval of the smelter gas contract in its entirety and not merely as to section 9 thereof. This is a violation of the final decree in this case, and should be enjoined.

The motion, so far as it relates to the attempt to secure disapproval of the provisions of the contract other than section 9 thereof, is granted; in all other respects it is denied. Let a decree in accordance herewith be entered.