**LORD et al., v. RADIO CORPORATION OF AMERICA.**

District Court, D. Delaware.  February 6, 1928.

No. 670.

1. **Monopolies ⬤⟿17(1)—Contract for sale of goods is within Clayton Act, though embodied as condition in agreement granting license to manufacture and sell patented goods (Clayton Act, § 3 [15 USCA § 14]).**

Contract for sale of goods is within Clayton Act, § 3 (15 USCA § 14), though embodied as condition or covenant of agreement granting license to manufacture and sell patented goods.

2. **Monopolies ⬤⟿17(2)—Provision of license agreement that licensee shall purchase number of tubes used in patented radio receivers from licensor held void, as monopolistic (Clayton Act, § 3 [15 USCA § 14]).**

Provision in agreement granting license to manufacture and sell patented radio receivers that nothing therein shall be construed as conveying license to manufacture, use, or sell vacuum tubes, except those purchased from licensor, and that licensee agrees to purchase number of tubes to be used as parts of circuit licenses and to make apparatus licenses initially operative, *held* within ban of Clayton Act, § 3 (15 USCA § 14), as preventing licensee from using or dealing in other tubes than those sold by licensor, except on risks manufacturers will not willfully incur, though not expressly, specifically, and directly so providing.

3. **Monopolies ⬤⟿17(2)—Contract in patented radio receivers license agreement to purchase licensor's vacuum tubes held void, as substantially lessening competition (Clayton Act, § 3 [15 USCA § 14]).**

Contract, embodied in agreement granting license to manufacture and sell patented radio receivers, for sale to licensee of number of licensor's vacuum tubes to be used in patented apparatus, *held* to lessen competition substantially, and tend to make licensor's monopoly in sale of tubes complete, in violation of Clayton Act, § 3 (15 USCA § 14), though licensor had unqualified right before contract was made to exclude others from using its patented inventions and tubes used in making patented circuits initially operative.

In Equity.  Suit by Arthur D. Lord, receiver for the De Forest Radio Company, and others, against the Radio Corporation of America.  On motions to dismiss the bill and grant a preliminary injunction.  Motion to dismiss denied, and motion for injunction granted.

Samuel E. Darby, Jr., of New York City, and Ernest R. Reichmann, of Chicago, Ill., and E. Ennalls Berl, of Wilmington, Del., for plaintiffs.

John W. Davis, Thurlow M. Gordon, and Fish, Richardson & Neave, all of New York City, and Wm. G. Mahaffy, of Wilmington, Del., for defendant.

MORRIS, District Judge.  This suit of Arthur D. Lord, receiver of De Forest Radio Company, and others, manufacturers of tubes for radio receiving sets, against Radio Corporation of America, the sole seller of the radio tubes made by General Electric Company and Westinghouse Electric & Manufacturing Company, to enjoin the enforcement by the defendant of paragraph 9 of certain license agreements, alleged to constitute an unfair method of competition and to be in violation of the Sherman Act (15 USCA §§ 1–7, 15) and the Clayton Act (38 Stat. 730), made by and between the defendant, the General Electric Company, Westinghouse Electric & Manufacturing Company, and 25 manufacturers of radio receiving sets, and assented to by American Telephone & Telegraph Company, is now before me on motion of the defendant to dismiss the bill for want of parties and on motion of the plaintiffs for preliminary injunction.  These agreements recite and provide in part:

"That whereas, the licensors represent that they severally own and/or have the right to grant licenses under various United States letters patent useful in tuned radio frequency receivers, as hereinafter defined; and

"Whereas, the licensee desires to make lawful use of some or all of the inventions covered by said letters patent of the United States, and to that end desires to acquire the licenses herein expressed:

"Now, therefore, in consideration of the premises, the licenses granted herein by the licensors to the licensee, and the covenants herein contained, it is agreed that each of the licensors hereby grants under all of the United States letters patent useful in tuned radio frequency receivers, * * * owned by it and/or with respect to which it has the right to grant licenses, during the term of this agreement, or until it is sooner terminated as hereinafter provided for, and upon the terms and conditions hereinafter set forth, and solely and only to the extent and for the uses hereinafter specified and defined, a personal, indivisible, nontransferable, and nonexclusive license to the licensee to manufacture at its factory located at ———, in the state of ———, and not elsewhere, without previous written permission obtained from the Radio Corporation, and to sell only for radio amateur reception, radio experimental reception, and radio broadcast reception throughout the United States and

its territories or dependencies, tuned radio frequency receivers * * * so manufactured by the licensee. * * *"

The assailed paragraph 9 of the agreement reads thus:

"Nothing herein contained shall be construed as conveying any licenses expressly or by implication, estoppel, or otherwise to manufacture, use, or sell vacuum tubes, except to use and sell the vacuum ·tubes purchased from the Radio Corporation as provided herein. The Radio Corporation hereby agrees to sell to the licensee and the licensee hereby agrees to purchase from the Radio Corporation the number, and only the number, of vacuum tubes, to be used as parts of the circuits licensed hereunder and required to make initially operative the apparatus licensed under this agreement, such tubes to be sold by the Radio Corporation to the licensee at the terms and at the prices at which they are then being sold by the Radio Corporation to other manufacturers of radio sets buying in like quantities for the same purposes. But the sale of such tubes by the Radio Corporation to the licensee shall not be construed as granting any licenses except the right to sell such tubes for use in, and to use them in, the·apparatus made and sold hereunder."

Upon oral argument, the third and the sixteenth sections of the Clayton Act (15 USCA §§ 14, 26) were looked upon by the plaintiffs as affording to them their clearest right to interlocutory relief. The third section, so far as here pertinent, provides:

"It shall be unlawful * * * to lease or make a sale or contract for sale of goods, * * * whether patented or unpatented, * * * on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods * * * of a competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for sale or such condition, agreement or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce." 38 Stat. 731.

The sixteenth section reads in part:

"Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws, including ·sections 2, 3, 7, and 8 of this act, when and under the same conditions and principles as, injunctive relief against threatened conduct that will cause loss or damage is granted by courts

of equity, under the rules governing such, proceedings, and upon the execution of proper bond against damages for an injunction improvidently granted and a showing that the danger of irreparable loss or damage is. immediate, a preliminary injunction may issue."

Plaintiffs' affidavits declare that the defendant and the 25 licensees combined do approximately 95 per centum of the total business done in radio receiving sets. Defendant's affidavits state that such business does. not exceed 70 per centum of the total.

[1] Plaintiffs' primary contention that paragraph 9 of the contracts is a violation of section 3 of the Clayton Act (15 USCA § 14): depends for its soundness upon the integrity of the three subordinate propositions that (1) there is a contract for the sale of goods; (2) on the condition that the purchaser shall' not use or deal in the goods of a competitor or competitors of the seller; and (3) that the effect of such contract for sale or such condition is "to substantially lessen competition or tend to create a monopoly in" radio tubes. The plaintiff finds in paragraph 9 an express contract for the sale of goods—radio· tubes—and asserts that whatever may be the remaining provisions embodied in the same instrument of writing they are powerless to, take the sales contract outside the field of: operation of the Clayton Act.

The defendant, on the other hand, pronounces the contract a license agreement, and, the provisions in paragraph 9 touching the purchase and sale of tubes, lawful covenants,. restrictions, or conditions of such license. Asserting that the Clayton Act is in derogation of the common law, and so must be strictly construed, it takes the position that. to hold that license agreements are subject to the policy of the act is to write therein by judicial legislation that which Congress saw, fit to omit. Support for this position it finds. in Curtis Publishing Co. v. Federal Trade· Commission (C. C. A. 3) 270 F. 881, 904– 906. In fact, this contention may be conceded, without denying that a subordinate contract or sales covenant embodied in and made an incident or condition of a license agreement is a contract for sale of goods. within the terms of the Clayton Act.

The argument that that statute was not intended to reach into license agreements and: there take hold of and weigh incidental and: subordinate contracts of sale of an element. of the patented apparatus for use by the licensee in making complete the patented combination, is not, as I understand it, precisely the old one—upheld in Heaton-Peninsular

Button-Fastener Co. v. Eureka Specialty Co. (C. C. A. 6) 77 F. 288, 35 L. R. A. 728, and in Henry v. Dick Co., 224 U. S. 1, 32 S. Ct. 364, 56 L. Ed. 645, Ann. Cas. 1913D, 880, and overturned in Motion Picture Co. v. Universal Film Co,. 243 U. S. 502, 514, 37 S. Ct. 416, 61 L. Ed. 871, L. R. A. 1917E, 1187, Ann. Cas. 1918A, 959—that, since a patentee may withhold his patent altogether from public use, he must logically and necessarily be permitted to impose any conditions which he chooses upon any use which he may allow of it, but is rather that a licensor must logically and necessarily be permitted to reserve the right to make and sell to the licensee for his use in completing the licensed apparatus manufactured by him any element of the patented combination, even though, as here, such element is old and, separately considered, free from patent monopoly.

It is true that in the Motion Picture Case, in which the argument advanced and sustained in the Button-Fastener Case was exploded, the supplies to which the notice attached to the machine was addressed constituted no part of the patented invention, and were held to lie wholly without the scope of the patent monopoly and the patent law, that the extent to which a patent owner might by special contract restrict the rights of a purchaser or licensee was not there involved, and that consequently the Motion Picture Case is not a refutation of the specific contention here advanced. But since that decision the Supreme Court has spoken in United States v. United Shoe Mach. Co., 247 U. S. 32, 38 S. Ct. 473, 62 L. Ed. 968, and in United Shoe Mach. Co. v. United States, 258 U. S. 451, 42 S. Ct. 363, 66 L. Ed. 708.

In each of these cases the relation between the United Shoe Machinery Company and the shoe manufacturers was contractual. The contracts were leases under which certain classes of machinery were supplied by the former to the latter. The leases contained restrictive clauses providing among other things that leased machines performing certain operations should not be used on shoes upon which certain other operations had not been performed by machines of the lessor; that as to certain kinds, if the lessor's machines were not used exclusively, the leases should be forfeitable; for purchase of supplies exclusively from the lessor and that leased insole machines should only be used on shoes upon which certain other operations were done by lessor's machines.

In the earlier case, prosecuted under the Sherman Act, the court answered the in-quiry—were they (the leases with their restrictions) anything more than the exercise of the patent monopoly?—in the negative. But in the later case, instituted under the Clayton Act, the court not only held the same restrictions under the same leases invalid, but disclosed by its words, as well as by its decree, that Congress intended the Clayton Act to prevent the acquisition of rights under the patent laws or otherwise in conflict with the inhibitions of that statute. The court said:

"That the leases were attacked under the former bill as violative of the Sherman Act is true, but they were sustained as valid and binding agreements within the rights of holders of patents. The Clayton Act specifically applies to goods, wares, machinery, etc., whether 'patented or unpatented.' This provision was inserted in the Clayton Act with the express purpose of preventing rights granted by letters patent from securing immunity from the inhibitions of the act." 258 U. S. 460 (42 S. Ct. 367).

Again: "No matter how good the machines of the United Company may be, or how efficient its service, it is not at liberty to lease its machines upon conditions prohibited by a valid law of the United States. Congress has undertaken to deny the protection of patent rights to such covenants as come within the terms of the Clayton Act. * * * Undoubtedly the patentee has the right to grant the use of the rights or privileges conferred by his patent to others by making licenses and agreements with them which are not in themselves unlawful, but the right to make regulation in the public interest under the police power of the states or in the exertion of the authority of Congress over matters within its constitutional power is controlled by general principles of law, and the patent right confers no privilege to make contracts in themselves illegal, and certainly not to make those directly violative of valid statutes of the United States."

To hold that a contract for the sale of goods is not within the Clayton Act, if it is embodied as a condition or covenant of a license agreement, would, I think, be writing into that statute a nullifying limitation and running counter to the views of the Supreme Court so broadly and emphatically expressed. [2] The second subordinate proposition of the plaintiff—that the contract of sale is on the condition that the purchaser shall not use or deal in the tubes of a competitor or competitors of the seller—is not sustained by any explicit condition or agreement to that effect. Yet the evidence now before me is

conclusive that the practical effect of paragraph 9 is to prevent the licensees (and jobbers and retailers as well) from using or dealing in tubes other than those sold by the defendant. Such conditions or agreements are as completely within the ban of the Clayton Act as if they were express, specific, and direct. Standard Fashion Co. v. Magrane-Houston Co., 258 U. S. 346, 355, 42 S. Ct. 360, 66 L. Ed. 653; United Shoe Mach. Co. v. United States, 258 U. S. 451, 457, 458, 42 S. Ct. 363, 66 L. Ed. 708.

The defendant resists this finding. In support of its position it asserts that the licensee has an absolute right to purchase from any one as many tubes as it desires for any purpose other than for use in the licensed circuits, and that in those circuits the licensee may use the tubes of any one for replacements. Abstractly, both assertions are correct. But from a practical standpoint these abstract rights are useless and worthless. This becomes manifest, I think, when it is appreciated that the license granted by the agreement is with respect to "all of the United States letters patent useful in tuned radio frequency receivers" owned by each of the licensees "and/or with respect to which it has a right to grant licenses." Such patents are numerous. Their claims run, probably, into the hundreds. Though their validity is not here questioned, undoubtedly many of them present questions of difficulty, particularly in matters of scope. I cannot conceive that a licensee would under such circumstances invite litigation when immunity therefrom might be had by equipping every receiving set made by him, whether believed to be within the scope of the patents of the licensors or not, with the tubes of the defendant.

To paraphrase a statement of the Supreme Court in United Shoe Mach. Co. v. United States, 258 U. S. 451, 458, 42 S. Ct. 363, 66 L. Ed. 708, the provisions of paragraph 9 are quite as effective as express covenants could be, and practically compel the use of tubes of the defendant in all receiving sets made by the licensees, except upon risks which manufacturers will not willingly incur. Again, that a manufacturer, all of whose sets are initially equipped with defendant's tubes, who should attempt to sell other tubes for replacement purposes would be in an anomalous position and confronted with difficulties sufficiently great to amount to a practical deterrent is made manifest, not only by human experience and reasoning, but by the record as well.

[3] The opinion of the Supreme Court in Standard Fashion Co. v. Magrané-Houston Co., 258 U. S. 346, 357, 42 S. Ct. 360, 66 L. Ed. 653, and the fact that the radio receiving sets for which tubes are supplied by the defendant have been brought by these contracts up to 70 per centum of the total output are relied upon by the plaintiffs to establish their third subordinate proposition, that the effect of such contracts or conditions is "to substantially lessen competition" and to "tend to create a monopoly" in radio tubes. The defendant, however, counters with the contention that under the patent laws, and before the contract for the sale of the tubes was made its right to exclude others from the use of the inventions of its patents, and from the sale of tubes though separately free from patent monopoly, to an infringer for use in making the patented circuits initially operative was unqualified, that its monopoly in the use and sale of tubes for that purpose was then complete, and that, consequently, the contracts for the sale of tubes neither substantially lessen competition nor tend to create a monopoly of the commerce in radio tubes.

Some reliance is placed upon Westinghouse Electric & Mfg. Co. v. Diamond S. F. Co. (D. C.) 268 F. 121, in which this view was sustained. If that reasoning was sound under the facts of that case, I think it not controlling here, for the facts disclosed by the record now before me indicate that the contracts for the sale of tubes embodied in the license agreements are an efficient instrumentality lessening competition substantially, and tending, as well, to make the monopoly of the defendant in the sale of tubes for radio receiving sets complete. Standard Fashion Co. v. Magrane-Houston Co., 258 U. S. 346, 355–357, 42 S. Ct. 360, 66 L. Ed. 353.

Furthermore I have difficulty in reconciling the Westinghouse Case with the last United Shoe Machinery Case. The first Shoe Machinery Case, which arose under the Sherman Act and differed from the Motion Picture Case, in that the rights of the lessor were based upon contract, and not upon a notice affixed to the machine, was, as I understand it, an affirmance of the doctrine that a patentee may in his lease impose a condition that the leased machine may be used only with the materials and other machines furnished or sold by the lessor and that such restrictions constitute a reservation of rights conferred upon a patentee by the patent statutes. Under that doctrine, user con-

trary to the conditions so imposed is infringement, and another supplying materials or machines for use with the leased machines would, upon such use, be guilty of contributory infringement to the same extent as if the materials and machines employed in the forbidden use constituted parts or elements of the patented machine.

Yet in the Shoe Machinery Case under the Clayton Act it was held that such restrictive and tying agreements must necessarily lessen competition and tend to monopoly, and that "these covenants, signed by the lessee and binding upon him, effectually prevent him from acquiring the machinery of a competitor of the lessor except * * * upon risks which manufacturers will not willingly incur." If this means that, had the lessor kept his leased machine wholly out of use, shoes would nevertheless have been made, and the manufacturers would have used to do that work some machines not made by the lessor, that by the "tying" restrictions the shoe manufacturers were effectually prevented from acquiring such nonpatented machinery of a competitor, and competition was thus substantially lessened, the same thing is equally true in the case at bar under the contract for the sale of tubes. But the opinion when considered as a whole seems to me to go beyond that meaning. It deals with conditions expressly held in the case under the Sherman Act to be within the exercise of the patent monopoly, yet they were denied any advantage because of that fact.

The distinction between covenants having and those not having the sanction and protection of the patent statutes was regarded as abolished when such covenants are tested by the Clayton Act. Apparently, in determining the effect of the lease and its conditions, the court took into consideration only the status and rights of the lessor after the lease was made, and ignored the lessor's prior status and rights. Thus it disregarded and denied any effect to the complete patent monopoly that existed in the lessor before the lease was made.

Viewed from any aspect, I think that case, 258 U. S. 451, 42 S. Ct. 363, 66 L. Ed. 708, decisive of the motion for a preliminary injunction in the case at bar. I think it likewise controlling on the motion to dismiss the bill of complaint for want of necessary parties.

The motion to dismiss the bill will be denied, and the motion to enjoin the enforcement by the defendant of the contracts for the sale of tubes will be granted.