### CAMPBELL v. ANNISTON OFFICE BLDG. CO. et al.

### No. 7414.

Circuit Court of Appeals, Fifth Circuit.

Nov. 22, 1934.

Rutherford Lapsley, of Anniston, Ala., R. E. Milling, Jr., of New Orleans, La., and Horace C. Wilkinson, of Birmingham, Ala., for appellant.

Niel P. Sterne, of Anniston, Ala., for appellees.

Before BRYAN, HUTCHESON, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

The appellant, the owner of shares of the common stock of Anniston Office Building Company, an Alabama corporation (herein referred to as the corporation), suing in behalf of himself, the corporation, and other owners of stock thereof, filed his bill in equity against the corporation and directors and officers thereof, alleging sundry acts of misconduct of named officers and directors of the corporation in violation of their duties to the corporation and its stockholders, whereby assets of the corporation were wasted and dissipated, and the foreclosure of the deed of trust securing first mortgage bonds of the corporation was wrongfully precipitated at a time when business and financial conditions were such that a sale of the mortgaged property of the corporation would not produce a larger sum than that of its first mortgage bonds, with the result that the corporation's stockholders lost their interest and estate in the corporate property and were damaged to the extent of $250,000; and the bill contained a prayer that the liability of directors and officers of the corporation for assets and property of the corporation wasted, misappropriated, and lost by reason of their breaches of trust be ascertained, and that the court by its decree enforce the collection and payment of the amount so ascertained and that that amount be distributed to those en-

titled thereto. The answer of the appellees put in issue material allegations of the bill. In the trial the evidence consisted principally of testimony given orally in the presence of the court. Upon the conclusion of the evidence the court made in writing findings of fact and conclusions of law, and entered a decree dismissing the bill. The court's findings of fact included the following: "That on the first day of November, 1931, the Trustee under power contained in the deed of trust, took charge of the properties of the Anniston Office Building Company and managed same for the benefit of the bondholders for which the deed of trust was given to secure; that thereafter the Anniston Office Building Company, its officers and directors, had no further management over said property and received no further income from said property; that the entire income received by said corporation prior to the first day of November, 1931, was properly accounted for; that there was no evidence of misapplication or misappropriation of funds belonging to the corporation and that the officers and directors were diligent in the management of its affairs and endeavored to prevent foreclosure of the deed of trust by pursuing what was in their judgment the advisable course; that there was no evidence of abuse of their power or authority in the management of the affairs of said corporation."

The following were the court's stated conclusions of law:

"1. The management of the corporate affairs of the Anniston Office Building Company by the officers and directors, respondents in this cause, up to the time the property was taken over by the Trustee under the power contained in the deed of trust, to-wit, November 1, 1931, was regular and valid and complainant is not entitled to any relief from or on account of any of said actions.

"2. There is nothing that the officers and directors of said corporation, the respondents in said cause, did in the management of the affairs of said corporation, or failed to do in the management of said affairs during the period complained of in said bill which the court finds to have been irregular, improper or invalid, and it is therefore the opinion of this court that the management of said corporate affairs by the respondents, the receipt and disbursement of its corporate funds, and the efforts put forth to prevent foreclosure, were regular, proper and valid and that complainant is not entitled to any relief whatsoever."

A principal charge contained in the bill was to the effect that during the year 1931, when the corporation had in cash a sum more than sufficient to pay the interest due on June 1, 1931, on its outstanding first mortgage bonds, the appellees Luther B. Liles, who was the president of the corporation and its executive manager, Charles A. Hamilton and W. F. Johnson, who were directors of the corporation, co-operated in representing to holders of first mortgage bonds of the corporation that the corporation was in worse financial condition than it really was, in buying for their own profit a considerable amount of first mortgage bonds for substantially less than the bonds were worth, in bringing about a default in the payment of interest due on June 1, 1931, and in precipitating a foreclosure of the deed of trust securing those bonds, though the corporation had an opportunity to secure an extension of ten years for the payment of its outstanding first mortgage bonds.

Evidence adduced in the trial showed the following: The Anniston Office Building Company was organized in 1926 for the purpose of constructing, owning, and operating an office building in Anniston, Ala. In the purchase of a lot and the construction of the building thereon the corporation expended the proceeds of $225,000 of first mortgage bonds, which were payable serially over a period of years, of $35,000 of second mortgage bonds, and of $149,500 of common capital stock, that being the amount of the authorized issue of $160,000 of capital stock which was issued. Pursuant to a provision of the deed of trust securing the first mortgage bonds, the corporation, between June 1, 1930, and March 1, 1930, through Caldwell & Co., the underwriters of the corporation's first mortgage bonds, deposited in the Bank of Tennessee the sum of $8,000, which was to be applied in paying to a named New York bank, which was the agent of the trustee under the deed of trust securing the first mortgage bonds, principal, and interest on those bonds. The Bank of Tennessee failed in November, 1930, and because of other of its depositors having prior liens on its assets, the corporation lost the entire amount of said deposit. Current income of the corporation was used in paying the interest due December 1, 1930, on its first mortgage bonds. On June 1, 1931, $6,000 in interest on the corporation's first mortgage bonds and $12,000 in principal thereof became due. At that

time the corporation owed interest on second mortgage bonds (the amount of which had increased from $35,000 to $60,000), past-due taxes, and $6,332.24 for borrowed money, the aggregate amount of the corporation's then matured indebtedness being over $24,000, and the corporation then had on hand less than $6,000 available for application on its indebtedness. At no time had the corporation's net income from the building been sufficient to meet expenses of operation, interest, and amortization on its first mortgage bonds. Prior to June 1, 1931, there had been considerable decrease in the corporation's income by reason of the loss of tenants and the inability to collect rents, and it became evident to the directors of the corporation that it could not be kept going unless an extension of the time of paying principal and interest of its first mortgage bonds could be obtained. Testimony showed that during the years 1931 and 1932 the assets of the corporation were not worth enough to pay its debts, which in June, 1931, amounted to approximately $280,000. In the latter part of May, 1930, Mr. Liles, the president of the corporation, and Mr. W. F. Johnson, one of the directors, in response to a request by telephone from an official of a bank in New Orleans which had sold to its customers a considerable amount of the corporation's first mortgage bonds, went to that city and had a conference with that official in reference to the affairs of the corporation. In that conference that official suggested a plan features of which were that the corporation give new first mortgage bonds for the amount of the outstanding first mortgage bonds, to mature in ten years, with sinking fund provisions which would require the net earnings after taxes, insurance, and interest, to be used to pay on those bonds, and that all the common stock be given to the then subordinate or junior bondholders, creditors, and stockholders. Mr. Liles and Mr. Johnson did not approve the plan suggested. Evidence did not show that it was practicable to consummate that plan, or that the directors of the corporation were afforded the opportunity of securing the suggested extension of the time for paying principal and interest of the first mortgage bonds. So far as appeared the suggestion was merely a suggestion of a plan to be attempted to be carried out. Prior to June 1, 1931, it became evident that the corporation could not be kept going and that it would not be possible to avoid the loss by the holders of its second mortgage bonds and of its issued stock of what they had invested therein, unless an extension of the time for

paying principal and interest of the corporation's first mortgage bonds could be effected. Between June 1, 1931, and October 30, 1931, with the knowledge, consent, and approval of the corporation's directors, Luther B. Liles, the president of the corporation and its executive manager, Charles A. Hamilton and W. F. Johnson, directors of the corporation, cooperated in the adoption and attempt to carry into execution the plan of bringing about the retirement of the corporation's outstanding first mortgage bonds by the use of an amount which could be obtained by mortgaging assets of the corporation. In pursuance on that plan, Hamilton and Johnson bought, at a total cost of $40,085, $60,000 of the corporation's first mortgage bonds; the purchasers agreeing that the corporation's shareholders and second mortgage bondholders could buy from them the bonds they had bought at the price at which they had been bought. After Liles had procured the consent of the insurance company to lend to the corporation $125,000, to be secured by a first mortgage on its properties, provided the corporation could acquire its outstanding first mortgage bonds and retire them, and while negotiations were pending for the purchase of a majority in amount of outstanding first mortgage bonds from a bondholders' protective committee, one W. C. Wilson, who was not an official, director, or stockholder of the corporation, purchased the bonds controlled by the bondholders' protective committee. Wilson refused to sell the bonds he had bought, being $122,500 in principal amount of such bonds, or to co-operate with directors of the corporation in preventing a foreclosure of the deed of trust securing those bonds. After the failure thus brought about of the plan adopted with the approval of the corporation's directors, the trustee under the deed of trust securing the first mortgage bonds, after being requested to do so pursuant to a provision of that instrument, instituted foreclosure proceedings, which resulted in the sale for $175,000 of the properties covered by the mortgage or deed of trust securing the first mortgage bonds, which properties constituted all the assets of the corporation.

 It is not fairly open to question that the court's findings of fact were supported by evidence and that its stated conclusions of law were devoid of error. The record contains nothing which properly can be given the effect of overcoming the presumption that the trial court's findings from evidence are correct, especially when the evidence consisted principally of testimony orally given in the

presence of the court. United Shoe Mach. Co. v. United States, 258 U. S. 451, 42 S. Ct. 363, 66 L. Ed. 708; Johnson v. Umsted (C. C. A.) 64 F.(2d) 316.

The record does not show that evidence adduced required or fairly justified the conclusion that during the year 1931 the assets of the corporation were worth or likely to become worth enough to pay its debts, which then amounted to approximately $280,000, or that the exercise by the corporation's officers and directors of the utmost diligence, good faith, and sound judgment in the conduct of its affairs could have resulted in its stock having any value. The appellant was not entitled to maintain the suit without showing that the stock of the corporation held by him had value, or would have had value but for acts or omissions of the appellees which are complained of. A holder of worthless stock of the corporation could not have been injured by the acts complained of. Darragh v. H. Wetter Mfg. Co. (C. C. A.) 78 F. 7; Williams v. Neville, 98 Miss. 268, 53 So. 594.

The record does not show that the decree appealed from was erroneous. That decree is affirmed.