## * S. R. WILCOX AND WIFE *v.* ISAAC C. MOON.

### *Libel. Declaration. Demurrer.*

1. Where a declaration in libel alleged that the defendant did "compose and publish" certain matters of and concerning the plaintiff, and then proceeded to set out libelous matter addressed directly to the plaintiff, it will be held good upon general demurrer, for while the libel is addressed to the plaintiff it may have been communicated to other persons, and so published.

2. The declaration need not allege that the defendant published the libel intending to cause that belief ascribed to it by the innuendo. Every person is presumed to intend the natural consequences of his acts.

3. While it may be true that the language alleged to be libelous is to be taken in the most innocent sense, the whole libel should be looked into to see whether a particular word will sustain the meaning ascribed to it by the innuendo.

Action for libel of the plaintiff wife. Heard at the December term, 1889, Tyler, J., presiding, upon general demurrer to the declaration. The demurrer was overruled and the defendant excepted.

The declaration was as follows:

"In a plea of trespass on the case for that heretofore and before the committing of the grievances hereinafter mentioned, she, the said plaintiff wife was duly joined in marriage to Silas R. Wilcox of said Bennington, who then was and ever since has been a physician and surgeon in the practice of his profession at said Bennington and vicinity, and ever since her said marriage has lived and cohabited with the said Silas R. as his wife, to wit: at said Bennington, and still is the wife of said Silas R. That at the time of the committing of the grievances hereinafter mentioned, her said husband was employing in his service, to care for his horses and teams, one George M. Marsh, and had employed said Marsh for a long time previously, to wit, one year, and that during said time, her said husband employed no other person to care

* Heard at February term, 1890.

for his horses and teams, and said Marsh was commonly known as and called the hostler of her said husband, and that during all said time, said Marsh was and still is a married man, and during all that time lived and cohabited with his wife at said Bennington; and the said defendant wickedly intending to injure the said Caroline E. Wilcox, did afterwards, to wit, on the 10th day of October, A. D. 1885, maliciously compose and publish of and concerning the said Caroline E., and of and concerning her said husband, and of and concerning the said Marsh and his wife, certain false, scandalous and defamatory matters following, of and concerning the said Caroline E. Wilcox, and her said husband, the said Silas R., of and concerning said Marsh and his said wife, that is to say:

'And further do you,' (meaning the said Caroline E.), 'know that the name of the hostler,' (meaning said Marsh) 'and yourself,' (meaning the said Caroline E.), 'are coupled together and handled quite extensively all through the village,' (meaning the village of Bennington), 'and claimed that you two', (meaning the said Caroline E. and said Marsh), 'are intimate together,' (meaning that said Caroline E. and said Marsh, had previously been, and then were, criminally intimate with each other, and that the said Caroline E. committed the crime of adultery with the said Marsh, and that the fact of the said commission of said crime by them and such criminal intimacy between them, had been and was at the time of said writing, talked and reported quite extensively by persons, all through said village of Bennington, and the commission of said crime by them and such criminal intimacy between them claimed and asserted to be true in fact by such persons, to wit, (at said Bennington) 'and some' (meaning some of such persons) 'shake their heads and say it looks strange that he' (meaning said Silas R.) 'should exchange with his' (meaning said Silas R.'s) 'hostler' (meaning said Marsh) and meaning that said Silas R. and said Marsh had exchanged wives, and that the said Caroline E. had consented to such infamous exchange) 'such is the talk all through the town' (meaning the town of Bennington) 'it' (meaning said talk) 'is in almost everyone's mouth' (meaning that it was true in fact, and had been and then was commonly talked and reported all through said town of Bennington, that said Silas R. and said Marsh had entered into the wicked and nefarious arrangemnt of exchanging their wives, and that pursuant to such arrangement said Caroline E. and said Marsh had been and were then, to wit, at said Bennington, guilty of com-

mitting the crime of adultery together, and in the acts of criminal intimacy and cohabiting with said Marsh as husband and wife, and that so general was the belief in the guilt of said Caroline E. and said Marsh as aforesaid, that almost every person in said town talked about, spread and reported the same as aforesaid. And also in a certain other part of which said libel there was and is contained the false, scandalous, malicious and defamatory words following, that is to say: 'I' (meaning the defendant) 'did not believe what I' (meaning the defendant) 'heard at first, but I' (meaning the defendant) 'have listened and I' (meaning the defendant) 'have watched and I' (meaning the defendant) 'have seen therefore I' (meaning the defendant) 'speak from knowledge' (meaning that the defendant did not at first believe said scandalous and defamatory talk and reports so alleged by him to have been circulated through the community, as aforesaid, but that he, the defendant, had, since he, the defendant, heard such talk and reports, listened and watched the said Caroline E. and said Marsh, and had seen and witnessed such acts of criminal conduct by them, so that he was at the time of the writing and publishing said libel able to say, and did then and therein assert the truth of said talk and reports, as of his own and personal knowledge.)

By means of the committing of which grievances by the said defendant, the said Caroline E. has been brought into public scandal, infamy and disgrace, and greatly injured in her good name and suffered great grief and mental anxiety, and been deprived of much sound sleep, and lost much valuable time, and been otherwise greatly injured, to wit, at said Bennington."

*J. C. Baker* and *Batchelder & Bates*, for the defendant.

The communication was addressed directly to the plaintiff. A libel addressed to and received by the plaintiff alone is not a publication.

*Phillips* v. *Janson*, 2 Esp. 624; *Lyle* v. *Clason*, 1 Cai. 581; *McIntosh* v. *Maberty*, 9 B. Mon. 119; *Clutterbuck* v. *Chaffus*, 1 Stark. 471; *Fonville* v. *McNease*, Dud. 303.

There should be a prefatory averment that the defendant intended to charge the plaintiff with a crime.

*Hoar* v. *Ward*, 47 Vt. 657; *Merritt* v. *Dearth*, 48 Vt. 65.

The innuendo cannot extend the meaning of the words be-

yond their natural signification without something in the prefatory averments or colloquium laying the foundation for it.

*Van Vetcher* v. *Hopkins*, 5 John. 211; *Fitzsimmons* v. *Cutler*, 1 Aik. 33; *Taft* v. *Howard*, 1 D. Chip. 275; *Ryan* v. *Madden*, 12 Vt. 51; *Wood* v. *Scott*, 13 Vt. 42; *Sanderson* v. *Hubbard*, 14 Vt. 462; *Nichols* v. *Packard*, 16 Vt. 83; *Holton* v. *Muzzey*, 30 Vt. 365; *Smith* v. *Hollister*, 32 Vt. 695; *State* v. *Atkins*, 42 Vt. 252.

*Waterman, Martin & Hitt*, for the plaintiff.

The word "publish" imports of itself a communication to other persons than the plaintiff.

Town. Sl. & Lib. 570-1; Stark. Sl. & Lib. 265.

The demurrer admits the libelous words and the signification given them by the innuendo, provided they will support it; and the whole libel should be taken together in determining this question.

*Hyde* v. *Moffat*, 16 Vt. 271; *Whitton* v. *Goddard*, 36 Vt. 730; *Royce* v. *Maloney*, 57 Vt. 325; *Nott* v. *Stoddard*, 38 Vt. 25.

The opinion of the court was delivered by

MUNSON, J. It is true that a communication to the plaintiff wife by a letter so transmitted as not to be seen by others would not be such a publication as would sustain an action. Town. Sland. § 95, 1 Am. Lead. Cas. 115. It is claimed in support of the demurrer that nothing but a communication to Mrs. Wilcox is alleged. It is said that the declaration merely avers that the defendant did "compose and publish," without stating the manner of publication; and that the form of the libelous matter shows that it was addressed to Mrs. Wilcox herself. But it does not necessarily follow from the form of the libel that it was sent to her as a letter, and so sent as to be seen only by her. If in fact sent to her, it may have been sent in such

a manner that the transmission itself would have been a publication to others. It may not have been communicated to her in any way, but have been privately shown to the writer's friends. Political invectives containing libelous matter have sometimes been put in the form of a letter addressed to the person assailed, and inserted in the public press. We have then, in this defamatory matter, a form of words which, while ordinarily indicating a communication confined to the person addressed, is entirely consistent with a different use. And these words are introduced by the usual averment that the defendant " did compose and publish." We apprehend that the force of this allegation is not so controlled by the language set forth as to require any further averment. The word "publish" in itself imports that communication to others which is essential to the tort. We think the demurrer to this declaration admits an actionable publication. Town. Sland. § § 324, 325.

It is urged that inasmuch as the crime imputed does not directly appear from the language charged, the declaration is fatally defective for the want of the usual averment that the defendant intended to cause it to be believed that the plaintiff was guilty of the offense pointed out by the innuendo. *Hoar* v. *Ward*, 47 Vt., 657, is cited in support of this position. That was an action for slander in charging the plaintiff with the commission of a crime. Neither the introductory part of the declaration nor the innuendo pointed out the particular crime intended, and the court considered that the averments did not impute crime to the plaintiff with sufficient certainty. In this connection *Redfield J.* speaks of the duty of the pleader to aver in the prefatory part of the declaration the crime intended to be imputed, and in the innuendo the crime insinuated. But this can hardly be accounted an assertion that a prefatory averment touching the defendant's intention is essential; and we think the usual allegation of the defendant's intention to cause a certain belief, is not required. A person is responsible for the

natural effect of his words, in the sense in which they were used, without regard to what he intended their effect should be; and we know of no technical rule which requires the allegation of an intent which is not a necessary element of the tort. When the defamatory words, alone or in connection with the explanatory facts appearing from the antecedent averments and colloquium, are such as to support the innuendo, and the words are found to have been used in the sense there ascribed, nothing further can be required in this regard, either by way of averment or proof.

It is also urged, in view of the holding in *Merritt* v. *Dearth*, 48 Vt. 65, that the language charged must be taken in its most innocent sense, in the absence of any averment or colloquium to give it another meaning. In the case cited, the word "intercourse" was used without any connecting words indicating the sense in which it was spoken, and the court held that in the absence of any prefatory averment as to the occasion or manner of its use to give it a sinister meaning, it must be taken to have been used in its more innocent sense. But in this case the defamatory matter taken together fairly indicates the use of the word "intimate" in a criminal sense, and the language is therefore legally susceptible of the meaning ascribed to it by the innuendo, without further aid than the prefatory averment showing the relations of the parties. The declaration is therefore sufficient on general demurrer, as the words must be taken to have been used in the sense alleged. *Sheridan* v. *Sheridan*, 58 Vt. 504; *Royce* v. *Maloney*, 57 Vt. 325; *Wilcox* v. *Moon*, 61 Vt. 484.

No other points in support of the demurrer have been made by counsel.

*Judgment reversed pro forma, and cause remanded with leave to replead.*