[Civ. No. 16101. First Dist., Div. Two. Dec. 29, 1954.]

ROLLEY, INC., Appellant, v. MERLE NORMAN COS-
METICS, INC. (a Corporation) et al., Respondents.

Joseph A. Brown and Harry Gottesfeld for Appellant.

Littler, Lauritzen & Mendelson, John B. Lauritzen and
Warren H. Saltzman for Respondents.

DOOLING, J.—This is an appeal from a judgment entered from an order sustaining a demurrer to a third amended complaint without leave to amend.

The third amended complaint alleges the following: Defendant Merle Norman Cosmetics, Inc., (hereinafter referred to as Norman) is a competitor of plaintiff in the cosmetics business; that defendant Norman distributes in excess of 3 per cent of all perfumery and cosmetic products; defendant retailers are engaged in business of purchasing cosmetics, etc., from manufacturers and distributors thereof for resale to the general public; upon information and belief plaintiff alleges that defendant Norman refuses to sell its products to retailers unless the latter agree to purchase so much of defendant Norman's products without selection or distinction that defendant reserves the right of unilateral termination of the franchise without cause, and that the franchise is evidenced by writing but not all the above terms and conditions are set forth in it; in return defendant Norman granted its retailers exclusive franchises within certain designated areas, the privilege of using the name "Merle Norman," and other benefits such as advertising materials, accounting and sales record forms, etc.

Plaintiff further alleged on information and belief that on or about November 1, 1947, defendant Norman called a meeting at the Palace Hotel of certain of the franchise holders including the defendant retailers, that they were instructed by defendant Norman to cease purchasing any cosmetic products manufactured, sold or distributed by any person other than defendant Norman and that defendant retailers had a six-month period within which to dispose of all products of competitors, and if they failed or refused to comply with this mandate defendant Norman would terminate the exclusive franchise and would also refuse to sell or deliver any further products of defendant Norman; the four defendant retailers who were customers of plaintiff complied with this order and thereafter refused to purchase any further products of plaintiff and cancelled orders for its products made at a prior time. Plaintiff further alleges in a general manner that such "agreement, concert and undertakings" by defendants were designed and intended by them and had the tendency and effect of fixing, determining and controlling terms, prices, business methods, etc., of the perfume and cosmetic products, that it tended to restrict trade and commerce, free and lawful competition and to promote a monopoly of this phase of the

cosmetics industry in California and the other states. Therefore plaintiff prayed for a decree enjoining all defendants from doing any of the above acts and that the court direct an accounting be made so that the amount of damages plaintiff has suffered may be ascertained and that plaintiff have judgment for twofold the damages sustained by it.

Appellant's argument is based on the general rule that "every contract, combination, or arrangement of which the direct purpose, probable effect, or necessary tendency is to stifle or unduly to restrict legitimate competition is unlawful at common law and under the anti-trust statutes."

At the common law combinations and contracts in restraint of trade are illegal and void as against public policy. ■ California courts had long recognized this public policy before the advent of the Cartwright Act and, as a matter of fact, the latter act is considered basically merely a statutory enactment of the common law of the state. (*Speegle* v. *Board of Fire Underwriters,* 29 Cal.2d 34, 44 [172 P.2d 867].)

■ Before discussing the law applicable, it seems best to restate the essential facts of which appellant complains so that they can be more easily compared to cases with analogous fact situations. From a negative standpoint the following facts can be deduced from the failure of the complaint to allege otherwise:

(1) There is no express contract alleged that sets forth the conditions under which the exclusive franchise is granted. Therefore defendant Norman and defendant retailers can discontinue their mutual relationship at their pleasure.

(2) There are no specific allegations of fact to indicate that Norman is a monopoly or has the ability to become one, that Norman is engaged in price fixing or has the ability to do so, or that defendants are restraining competition.

From an affirmative standpoint the specific acts complained of are:

(1) Defendant Norman offered an exclusive franchise of its own products to certain retailers, some of whom were customers of plaintiff.

(2) At a meeting of certain of these retailers defendant Norman offered them the alternative of dealing exclusively with it in obtaining cosmetics for resale or else of losing their right to act as retailers for its products.

(3) At least four of the retailers considered the exclusive franchise of sufficient value so that they agreed not to purchase

cosmetics from other competitors. One of the competitors was the plaintiff.

(4) As a result of this plaintiff's sales have decreased in amount.

In *Speegle* v. *Board of Fire Underwriters, supra,* 29 Cal. 2d 34, the Supreme Court reversed a judgment entered from the trial court's order sustaining a demurrer without leave to amend. The plaintiff was an insurance agent who entered into written contracts of agency with 14 defendant insurance companies, all members of the Board of Fire Underwriters. The board, acting in concert with the local agents' association, accused plaintiff of violating his contracts with members of the board by placing orders with nonboard companies. When plaintiff refused to discontinue this practice, defendants caused the termination of his contract with board companies.

Plaintiff alleged *inter alia* that it was the purpose of the board to dominate the class of insurance written by its members, fix terms, conditions and rates for such insurance, etc., and by such methods to limit and restrict fair competition.

This case raised five separate questions but the one of interest here is Justice Traynor's discussion of whether the plaintiff has stated a cause of action under statutory or common law rules against restraint of trade.

He first states the rule that the "Cartwright Act merely articulates in greater detail a public policy against restraint of trade that has long been recognized at common law." He then goes on to say: "The public interest requires free competition so that prices be not dependent upon an understanding among suppliers of any given commodity, but upon the interplay of the economic forces of supply and demand. Combinations between insurers or insurance agents for the purpose of stifling competition in the insurance market and fixing insurance rates are clearly in violation of the common law rules against restraint of trade. (Citing cases.) Insurance is a matter of such public concern that many states regard the protection afforded the community by statutory or common law rules against restraint of trade as insufficient and have accordingly enacted special statutes against combinations that seek to dominate the field of insurance or have given their insurance commissioners special powers over insurance rates."

Two things make this case significantly distinguishable from the one at bar. (1) There was a combination of competing underwriters cooperating with a group of agents to

compel the plaintiff to cooperate with them in their efforts to dominate this phase of the insurance business. Here there is only a single competitor whose business is less than 4 per cent of that done who requires his customers to deal exclusively in his own products before he will sell to them. (2) Insurance is a matter of public concern because of its universal importance in people's lives. Although the cosmetics industry may be considered by many as a great morale booster, it can hardly be said to be an industry of fundamental importance in which the general public has a crucial interest.

In *Getz Bros. & Co.* v. *Federal Salt Co.*, 147 Cal. 115 [81 P. 416, 109 Am.St.Rep. 114] the court held that a contract whereby one party agreed to refrain from purchasing salt from anyone else in the state or abroad and also ''to discourage in any possible manner any such shipments or importations of sale (*sic*) by any other parties'' in consideration of $10,000 was void under the code (now Bus. & Prof. Code, § 16600).

Respondent distinguishes this case from the instant one because here there was no contract pleaded that was binding on defendant retailers to purchase exclusively from defendant Norman. Therefore the code section is inapplicable.

Another distinction in the two cases which is suggested by respondent is the fact that the court stressed the monopoly aspects of the contract. That is, one party agreed to do its best to discourage competitors ''in any possible manner.'' Here the defendant Norman acting as a competitor has simply made a better offer in the eyes of the four defendant retailers. If plaintiff wants its customers back its recourse is to itself make a better offer rather than attempt to get the courts to act as its guardian, so to speak, in the business world.

*Morey* v. *Paladini,* 187 Cal. 727 [203 P. 760] is a case where the court held that a contract was in partial restraint of trade under the then statutory equivalent of Business and Professions Code, section 16600, and therefore void, and was monopolistic in nature thereby violating the Sherman Anti-Trust Act. The plaintiff's assignor agreed to supply defendant with lobsters during the closed season in California. The contract contained a clause whereby the defendant was given the exclusive right to sell these lobsters in part of California, Oregon, Washington and Nevada. Plaintiff's assignor represented a fisheries company that controlled

the entire supply of lobsters coming into California from Mexican waters.

Here again the case is clearly distinguishable because the court emphasized the monopolistic aspect in the contract. In the case at bar defendant Norman required of his customers with exclusive franchises that they purchase only its cosmetic lines. The retailers are free to purchase any other company's cosmetics if they wish to, but in the Paladini case there was simply no other source of lobsters during the closed season.

Respondents have submitted to this court a comprehensive, accurate and well reasoned brief. They rely heavily on *Whitwell* v. *Continental Tobacco Co.,* 125 F. 454 [60 C.C.A. 290, 64 L.R.A. 689].

Plaintiff, a tobacco jobber, sued defendant tobacco company under the authority of the Sherman Act on the sole ground that defendant company refused to sell tobacco to him at prices which would enable him to resell at a profit, unless he refrained from buying, selling or handling tobacco made by competing companies. The court states the question thus at page 456: ". . . may one engaged in commerce among the states lawfully select his customers, and sell only to those who do not buy or sell the wares of his competitors, or is such a restriction of his own trade by a manufacturer or merchant and his employes a 'contract, combination or conspiracy in restraint of trade' . . ." As pointed out above the Cartwright Act is basically a codification of common law and the Sherman Anti-Trust law is also considered to be a restatement of common law. (*Apex Hosiery Co.* v. *Leader,* 310 U.S. 469, 498 [60 S.Ct. 982, 84 L.Ed. 1044, 128 A.L.R. 1044].) Therefore, while not controlling, the reasoning in the Whitwell case is persuasive.

The court first stated that the purpose of the act was to prevent the stifling or substantial restriction of competition and therefore the test of the legality of a combination under the act is its direct and necessary effect upon competition in commerce. (P. 459.)

"The right of each competitor to fix the prices of the commodities which he offers for sale, and to dictate the terms upon which he will dispose of them, is indispensable to the very existence of competition. Strike down or stipulate away that right, and competition is not only restricted, but destroyed."

The court goes on to point out that tobacco companies (like cosmetic companies) do not dispense articles of prime necessity, and therefore can refuse to sell their commodities at any price.

The court concludes that the combination between the defendant employe and defendant company is the type that is the essence of competition and operated in no way to restrict competitors in their rights to fix prices of goods and the terms of the sales of similar products according to their discretion. (P. 461.)

In rejecting the argument that this agreement was an attempt to monopolize, the court again pointed out that the fundamental purpose of the whole act is to prevent the stifling of competition, and all competition, in a sense, is an attempt to monopolize. (P. 462.)

Two distinctions in the facts of the Whitwell case should be noted. One is that plaintiff based his suit on the agreement between defendant tobacco company and his employe relating to the terms under which tobacco would be sold to jobbers. In the instant case the agreement objected to is between defendant supplier and four of his customers. Also, the suit was brought by a customer and not by a competitor. The distinctions, however, seem unimportant and do not weaken the reasoning of the court in its application to this case.

The Whitwell case has been cited with approval in several federal cases, the latest being *Brosious* v. *Pepsi-Cola Co.*, 155 F.2d 99. There the defendant Pepsi-Cola Company and Cloverdale Spring Company were alleged to have refused to sell Pepsi-Cola to the plaintiff unless the latter refrained from buying, selling or handling soft drinks made by independent manufacturers who were competing with the defendants for the trade of the public. The court held that the fixed conditions of sale to plaintiff did not constitute a restriction upon competition because defendants' competitors were free to sell their commodities to plaintiff and all others who did not purchase from defendant and also to compete for sales to customers of defendant company by offering them goods at better prices or on better terms in general than offered by Cloverdale Spring Company.

In *Great Western Distillery Products, Inc.* v. *J. A. Walthen D. Co.*, 10 Cal.2d 442, 445-446 [74 P.2d 745] the defendant and plaintiff entered into a contract whereby defendant agreed that as long as plaintiff continued to purchase from

defendant all its warehouse receipts for whiskey and refrained from selling warehouse receipts from any other distillery, the defendant would not sell warehouse receipts to any other person except one in California.

In holding that this was not a contract in restraint of trade under Business and Professions Code, section 16600, the court said: ". . . both the purpose and the effect of the contract are, not to restrict the sale of defendant's receipts, but to create an instrumentality by which the receipts will be exploited and sold. The contract does not restrain anyone from exercising a trade or business of any kind within the purview of sec. 1673 (now Bus. & Prof. Code, § 16600) of the Civil Code." (*Cf. Katz* v. *Kapper*, 7 Cal. App.2d 1 [44 P.2d 1060].

The Clayton Act (15 U.S.C.A. § 14) provides specifically that it is unlawful "for any person . . . to lease or make a sale or contract for sale of goods . . . on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods . . . of a competitor . . . where the effect of such . . . agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce." However, the Clayton Act is not spoken of as a codification of existing common law but is entitled "An Act to supplement existing laws against unlawful restraints and monopolies and for other purposes." The U. S. Supreme Court pointed out in *United Shoe Machinery Corp.* v. *United States*, 258 U.S. 451, 460 [42 S.Ct. 363, 366, 66 L.Ed. 708], that the Clayton Act is broader in its prohibitions than the Sherman Act. It is in the same respects broader than the Cartwright Act so that cases based on the Clayton Act are inapplicable here.

It is the rule that on a demurrer pleadings must be construed as true and they must be reasonably interpreted. That is, "they must be read as a whole and each part must be given the meaning that it derives from the context wherein it appears. (Citing cases.) 'Allegations must be liberally construed, with a view to substantial justice between the parties' . . . which is not served when technical forfeitures prevent a trial on the merits." (*Speegle* v. *Fire Underwriters, supra*, 29 Cal.2d p. 42.)

With that rule in mind it is still quite a step to say that a single competitor whose business is not extensive enough to stifle competition and who offers his product to a retailer coupled with an exclusive franchise for the area

provided he purchases only the supplier's line of products is liable for damages and can be enjoined by another competitor who is the losing suitor in this triangle. The defendant Norman is one competitor in a field occupied by many, and the four defendant retailers are even more insignificant in relation to the number of retailers in this business. To say that this relationship will prevent competition is unrealistic. It should prompt the plaintiff to build a better mousetrap, and that after all is the essence of competition. . Judgment affirmed.

Nourse, P. J., and Kaufman, J., concurred.

A petition for a rehearing was denied January 28, 1955, and the following opinion was then rendered:

THE COURT.—In its petition for rehearing counsel for appellant frankly admits that the opinion of this court is correct. It admits that its third amended complaint does not state a cause of action. It asks us to grant a rehearing to consider the question whether the demurrer to its second amended complaint was properly sustained. Two ready reasons for denying the petition suggest themselves.

1. This matter is presented for the first time on petition for rehearing. "Appellate courts cannot submit to piecemeal argument and will not consider on petition for rehearing questions not previously raised." (*Bradley* v. *Bradley*, 94 Cal.App.2d 310, 312 [210 P.2d 537, 211 P.2d 638] and cases cited.)

2. The court on appeal will not consider the sufficiency of a superseded complaint where the plaintiff has amended it after demurrer sustained. (*Sheehy* v. *Roman Catholic Archbishop*, 49 Cal.App.2d 537, 540-541 [122 P.2d 60]; *Metzenbaum* v. *Metzenbaum*, 86 Cal.App.2d 750, 752 [195 P.2d 492]; *Pearson* v. *Parsons*, 173 Cal. 336 [159 P. 1173]; *Schneider* v. *Brown*, 85 Cal. 205, 206 [24 P. 715].)