[Civ. No. 16114.   First Dist., Div. Two.   Mar. 30, 1955.]

FREDRICK S. FARR et al., Appellants, v. E. K. BRAMBLETT et al., Respondents.

38

Fredrick S. Farr in pro. per., Thompson & Thompson, Farr & Millard and Elizabeth Palmer for Appellants.

Ross & Harris, Church & Abramson, Norris Montgomery and Clarence A. Rogers for Respondents.

DOOLING, J.—This is an action for libel by newspaper advertisements during the 1950 election campaign of defendant Bramblett as congressman for the Eleventh (now Thirteenth) Congressional District of California. With Bramblett active members of his campaign committee and of the Eleventh Congressional District Republican Committee are made defendants. Plaintiffs are Fredrick S. Farr, an attorney, and his wife, both at that time active in the campaign for the democratic candidate in that district, Marion R. Walker.

With respect to plaintiffs' fourth amended complaint the trial court granted motions to strike all allegations of general and exemplary damages, sustained general demurrers

without leave to amend insofar as the complaint purported to set up actions for the recovery of general or exemplary damages and otherwise sustained special demurrers to each cause of action on the grounds of ambiguity, uncertainty and unintelligibility with 10 days to amend. Plaintiffs declined to amend and appeal from the judgment of dismissal entered accordingly. The basic facts alleged in the fourth amended complaint are that the defendants conspired to support the candidacy of defendant Bramblett and to oppose the candidacy of Marion R. Walker among other things by knowingly and maliciously annoying and degrading plaintiffs by the publication of false statements concerning them with the malicious intent to damage their reputations so as to further opposition to their candidate Marion R. Walker.

In carrying out said conspiracy certain of the defendants acting for all composed an advertisement and had a matrix made of it reading as follows:

"Get the REDS out of America. Get America out of the RED.

"MARION

"LOOK BEHIND YOU!

"FREDERICK S. FARR is listed as the 11th Democratic Congressional District Chairman. This is the man who is directing your campaign—who is putting words in your mouth.

"IS THIS THE SAME FREDERICK S. FARR who lived in San Francisco and was a subscriber to the Communist PEOPLES WORLD? Is this the same Frederick S. Farr who with his wife was involved in the COMMUNIST FRONT organization, the AMERICAN FRIENDS OF THE CHINESE PEOPLE? (Cited twice by the California Un-American Activities Committee). Is this the same Frederick S. Farr who was on the VOLUNTARY defense committee for the notorious Raymond Schultz-Betty Morris case of the San Francisco 'peace poll', CO-ORDINATING COUNCIL FOR PEACE at the outbreak of the war?

"IS THIS THE REASON why 3 elected members of the Monterey Democratic Central Committee resigned?

"WHOSE ADVICE would you take, Marion, if elected, 'in fighting Communism' and keeping this nation free'?

"VOTERS! HEED GOVERNOR WARREN'S WARNING . . . 'May I suggest that you carefully analyze the record of every candidate for public office, and determine his background and the identity of his supporters . . .'' (1948)

"Marion R. Walker, these questions are asked at this date, giving you ample time to make a reply before election day, Nov. 7. In the interest of Americanism, we and the public want to know.

"11th Congressional District Republican Committee
Harry Crean — S. V. Christierson

"Re-Elect                                                    to CONGRESS
"E. K. 'ERNIE'         B R A M B L E T T            Nov. 7"

They caused said matrix to be displayed to the editors, publishers, managers and employees of eight named newspapers, thereby publishing the statements therein. These statements were untrue as alleged in detail; the defendants had no cause to believe them true, and made them with the intent to vex, annoy and injure plaintiffs and in a state of mind arising from hatred and ill will toward them.

They caused this advertisement to be published in six of the named newspapers, the advertisement appearing on the 1st or 2d of November, 1950. On the 2d of November plaintiffs' attorneys sent the following telegram to each of the defendants and to the editor of each of the papers which had published the advertisement:

"MONTEREY, CALIFORNIA
NOVEMBER 2, 1950

"WE REPRESENT FREDERICK S. FARR AND HIS WIFE ABOUT WHOM YOU HAVE PUBLISHED FALSE, MALICIOUS AND LIBELOUS STATEMENTS IN PAID POLITICAL NEWSPAPER ADVERTISEMENTS BY AND ON BEHALF OF CONGRESSMAN E. K. BRAMBLETT. THESE STATEMENTS PUBLISHED THROUGHOUT THE 11TH CONGRESSIONAL DISTRICT ACCUSE MR. FARR AND HIS WIFE OF COMMUNIST ACTIVITIES EACH WITHOUT FOUNDATION IN FACT. PERHAPS IN THE STRAIN OF YOUR CAMPAIGN, YOU DID NOT REALIZE THE SERIOUSNESS OF THESE CHARGES, CONSEQUENTLY AN OPPORTUNITY WILL BE AFFORDED AND DEMAND IS MADE UPON YOU INDIVIDUALLY AND AS A MEMBER OF THE BRAMBLETT COMMITTEE THAT YOU OR YOUR REPRESENTATIVE MEET IN OUR OFFICE BEFORE FIVE P. M. TODAY NOVEMBER 3RD TO ARRANGE FULL DETAILS OF IMMEDIATE AND SATISFACTORY AND FULL RETRACTION OF THESE FALSE AND LIBELOUS STATEMENTS. FAILING THIS, IMMEDIATE PROCEEDINGS WILL BE INITIATED.

"THOMPSON AND THOMPSON,
ATTORNEYS AT LAW
126 BONIFACIO STREET,
MONTEREY, CALIFORNIA"

The next day plaintiff Fredrick S. Farr sent an additional telegram to the same informing them that no action was contemplated against any newspaper.

No correction followed. As early as November 4th, 1950,

the original complaint in this action was filed. (The election day November 7, 1950, was in sight.)

After the above first telegram had been sent the defendants in pursuance of the same conspiracy and with the same malicious intent drew up a second advertisement and made advertising copy of it which read as follows:

"Is This a Reply to Our Questions?

"A few days ago we published a newspaper advertisement, asking Marion R. Walker the following questions about his campaign manager, Frederick S. Farr:

"1. Is this the same Frederick S. Farr who lived in San Francisco and was a subscriber to the Communist Peoples World?

"2. Is this the same Frederick S. Farr who with his wife was involved in the Communist Front organization, the American Friends of the Chinese People? (Cited twice by the California Un-American Activities Committee).

"3. Is this the same Frederick S. Farr who was on the Voluntary defense committee for the notorious Raymond Schultz-Betty Morris case of the San Francisco 'peace poll', Coordinating Council for Peace at the outbreak of the war?

"Why Did We Ask These Questions?

"Because certain documents in the files of the California Un-American Activities Committee, plus other documented sources, present conclusive evidence that a Frederick S. Farr has a record justifying the questions listed above.

"The evidence is clear!

"Mr. Farr's Answer is a threatened libel suit—but, in a statement to the Monterey Peninsula-Herald, he said in part, 'As for the American Friends of the Chinese People, it is true that my wife was a member and I attended several meetings.'

"(Voters! See question number 2 above)

"We have not accused anyone of being a Communist. Because of documented evidence we have asked the questions. We believe the voters should have the Truth!

"11th Congressional District Republican Committee

"Leon Harthorn—Paul Leavens"

They caused this advertisement copy to be displayed on the 4th of November, 1950, to the editors etc. of four named newspapers, thereby publishing it. (There are again the allegations as to falsity, absence of probable cause, intent and state of mind with respect to the first advertisement.)

They caused this second advertisement to be published in two of the newspapers to which it was shown, which papers printed it on November 6, 1950.

The fourth amended complaint contains 80 causes of action, 40 for plaintiff Mr. Farr and 40 similar ones for plaintiff Mrs. Farr. Each relates to one of 20 acts; eight acts of displaying the matrix of the first advertisement to the personnel of eight different newspapers; six acts of publishing the first advertisement in six of these newspapers; four acts of displaying the copy of the second advertisement to the personnel of four different newspapers and two acts of publishing the second advertisement in two of these newspapers. Each such cause of action is duplicated, one alleging the advertisement without innuendo (as libel *per se*) the other adding an innuendo. Each of these 80 counts contains directly or by reference allegations for general damages, special damages and punitive damages.

Respondents in their brief assert the following grounds upon which they rely in support of the order sustaining the general demurrers (these are copied verbatim from the headings in their brief):

"A. The publication was a privileged communication.

"B. The publication, the basis of the alleged action for libel, was without malice.

"C. Plaintiffs failed to comply with the provisions of Section 48a of the Civil Code.

"D. Plaintiffs' original complaint was filed prematurely, and cannot be cured by amendment.

"E. Plaintiffs' causes of action, if any, are barred by the Statute of Limitations."

We will first consider the specification numbered "C," since insofar as it is good it is a complete defense to the action for general damages and renders the other specifications unimportant.

The question presented is in how far under the above alleged facts section 48a, Civil Code, prevents recovery of general and punitive damages in these several counts. There is no contention that if amendment in this respect had been permitted a stronger case for appellants could have been formulated.

Section 48a, Civil Code, reads insofar as applicable to the point: "1. In any action for damages for the publication of a libel in a newspaper, . . . plaintiff shall recover no more than special damages unless a correction be de-

manded and be not published . . . as hereinafter provided. Plaintiff shall serve upon the publisher, at the place of publication . . . a written notice specifying the statements clamed to be libelous and demanding that the same be corrected. Said notice and demand must be served within 20 days after knowledge of the publication . . . of the statements claimed to be libelous.

''2. If a correction be demanded within said period and be not published . . . in substantially as conspicuous a manner in said newspaper . . . as were the statements claimed to be libelous, in a regular issue thereof published . . . within three weeks after such service, plaintiff, if he pleads and proves such notice, demand and failure to correct, and if his cause of action be maintained, may recover general, special and exemplary damages. . . .''

■ It is contended by appellants that this section does not apply to persons placing paid advertisements. Although this position has been accepted in some other. jurisdictions (see note 13 A.L.R.2d 277, 293, and cases there cited), the text of our statute (''In any action for damages for the publication of a libel in a newspaper'') is so wide that it necessarily includes the publication of a libelous advertisement. In *Pridonoff* v. *Balokovich,* 36 Cal.2d 788, 791 [228 P.2d 6], it was held that the section because of its language applies to any author of a libel in a newspaper. We cannot distinguish the authors of printed newspaper advertisements from other authors who have the products of their pen placed in a newspaper. While there would appear to be good reasons why the provisions of section 48a should not apply to the person furnishing and paying for the publication of a libelous advertisement in a newspaper, the language of the section is all-embracing and leaves room for no exceptions. In the Pridonoff case the court expressly cited and refused to follow *Comer* v. *Louisville & N. R. Co.,* 151 Ala. 622 [44 So. 676], a case holding that the Alabama statute did not apply to an advertiser. (36 Cal.2d p. 791.)

■ The next question is whether the stated telegrams of November 2, 1950, fulfilled the requirements of a demand for correction provided for in section 48a, *supra.* We answer the question in the negative. The telegrams did not demand correction but demanded the attendance on November 3d at a meeting in the office of plaintiffs' attorney to arrange for a retraction. The difference between this and the statutory demand is accentuated by the statement that failing such

meeting immediate proceedings would be initiated. Accordingly they were instituted the day after the one appointed for the meeting, whereas the statute gives three weeks for retraction. ■ It is understandable that plaintiffs wished to take measures counteracting the advertisement prior to election day, which was imminent, but section 48a, Civil Code, contains no provision for cases where immediate retraction is essential. ■ Those who received the telegrams could reasonably conclude that something more and different than the correction of section 48a was demanded from them. They were under no duty to attend the meeting to which they were summoned and the institution of legal action immediately thereafter could well strengthen their belief that no demand under section 48a was intended. (Compare *Harris* v. *Curtis Publishing Co.*, 49 Cal.App.2d 340, 354 [121 P.2d 761].) Moreover the demand was not served on the publishers as required by section 48a but was addressed to the editors of the newspapers, without any mention of the publishers. We conclude that no demand in accordance with section 48a was made and that therefore the court below correctly held that plaintiffs have no action for more than special damages with respect to the published advertisements.

■ However there are in the fourth amended complaint many causes of action not based on the publication of the advertisements in a newspaper but on the displaying of the matrix or the copy of said advertisements to editors, publishers, managers and employees of newspapers. Such in itself also constitutes publication and in a literal sense it is not publication "in a newspaper." Nevertheless insofar as such displaying is preparatory only to the printing in the newspaper it must be considered covered by section 48a Civil Code. The printing of any matter in a newspaper requires its display to editors and personnel of the newspaper and if for said display there remained a liability in general and exemplary damages notwithstanding lack of demand for correction much of the intended effect of section 48a would be lost. There are no allegations showing that the display was different or more than that required in preparation of the printing. We therefore hold that in the causes of action relating to the display of matrix or copy followed by printing of the advertisement in the paper in question appellants are not entitled to general or exemplary damages.

■ But not with respect to all newspapers as to which display of matrix or copy is alleged is there an allegation

of publication by printing. Section 48a by its terms only applies where there has been a "publication in a newspaper." Where the newspaper fails or refuses to publish the libelous matter its exhibition to the persons connected with the newspaper cannot fall within its terms. When there has been no publication in a newspaper, how could there be a demand upon the publisher of the newspaper for a retraction of something which the newspaper never published? The exhibition of the libelous matter to the newspaper personnel is protected when the libel is afterwards published in the newspaper as a part of the necessary process of publication, but where the libel is not afterwards printed in the newspaper its exhibition to the newspaper personnel is no part of such process of publication and section 48a can have no application to it. Such situation is alleged as to the showing of the matrix of the first advertisement to the editor, etc., of the Peninsula Herald (1st and 2d, 41st and 42d causes of action) and the Seaside News Sentinel (15th, 17th, 55th and 57th causes of action); and as to the showing of the copy of the second advertisement to the editor, etc., of the Salinas Californian (29th, 30th, 69th and 70th causes of action) and the Ventura County Star Free Press (31st, 32d, 71st and 72d causes of action). With respect to all other counts the allegations as to general and exemplary damages were correctly stricken because of the failure of plaintiffs to comply with section 48a, Civil Code.

Respondents contend that the dismissal of the whole action is at any rate justified because it appeared on the face of the complaint that their publications were privileged under section 47, subdivision 3, as a communication without malice to persons interested therein by one who is also interested. This contention is based on plaintiff Fredrick Farr's position as a public officer as Chairman of the California 11th Congressional District of the Democratic party, so that his official conduct was of public concern. (*Snively* v. *Record Publishing Co.*, 185 Cal. 565, 571 [198 P. 1].) It is not clear why the same could apply to Mrs. Farr who had no public function and of whom it is only alleged that she was and is active in civic affairs in her city. However, the contention as to both is without merit. ■ The privilege invoked is a qualified privilege only which expressly does not cover publications made with malice in fact. (Civ. Code, § 47, subd. 3; 16 Cal.Jur. 67 et seq.)

█ In the complaint it is alleged that the statements were published by defendants "well knowing they had no probable, or any cause, for believing said statements, or any of them, to be true; and said statements were so published with the intent and design to injure, disgrace and defame this plaintiff; and further, such statements, so made by defendants, exhibited a state of mind arising from hatred or ill will for this plaintiff evidencing a willingness to vex, annoy, or injure this plaintiff, in order to further said opposition to Marion R. Walker and promote their mutual interest in electing defendant E. K. Bramblett." These allegations are a sufficient pleading of actual malice to exclude the alleged libels from the privilege claimed. (*Washer* v. *Bank of America*, 21 Cal.2d 822, 831 [136 P.2d 297, 155 A.L.R. 1338].)

█ It is next contended that plaintiffs' causes of action are barred by the statute of limitations. This is not so. It is conceded that the causes of action contained in the fourth amended complaint were in substance introduced in the second amended complaint filed August 28, 1951, well within the one-year term of section 340, subdivision 3, Code of Civil Procedure. It is not contended that when they were first introduced defendants moved to strike them out on the ground that they were entirely foreign to the cause of action set out in the original complaint. If this is not done the objection is waived. (*Groom* v. *Bangs*, 153 Cal. 456, 459 [96 P. 503].)

The claim that the action was prematurely brought rests on the fact that it was filed before the time for printing a retraction provided in section 48a had expired. As to those counts pleading the exhibition of a matrix without a subsequent publication in the particular newspaper section 48a is not applicable and this argument as to those counts is for that reason unwarranted.

It was suggested on oral argument that the pleading of the publication of the matrices is insufficient because it is not alleged that those to whom they were exhibited read them. It is alleged that the matrix was "published" to such persons. █ The verb "publish" is a term of art in the law of libel (*Ostrowe* v. *Lee*, 256 N.Y. 36 [175 N.E. 505]) and "in itself imports that communication to others which is essential to the tort" (*Wilcox* v. *Moon*, 63 Vt. 481 [22 A. 80, 81]; *State* v. *Elder*, 19 N.M. 393 [143 P. 482, 485]; *Morgan* v. *Black*, 132 Ga. 67 [63 S.E. 821, 822]; *Hamilton* v. *Lowery*, 33 Ind.App. 184 [71 N.E. 54, 56]; *McLaughlin* v. *Schnell-bacher*, 65 Ill.App. 50, 55; *Sproul* v. *Pillsbury*, 72 Me. 20;

Code Civ. Proc., § 460, "it is sufficient to state, generally, that the same was published . . .").

We would be justified in ignoring the special demurrers, since respondents have not complied in their brief with rule 15(a), Rules on Appeal, with regard to headings. The only headings in their brief in support of the special demurrers read "Specification Number 1," "Specification No. 2" etc., up to No. 9. These are not, as the rule requires, "generally descriptive of the subject matter covered." However since the judgment must be reversed as to the counts mentioned we consider some of them briefly for the benefit of court and counsel.

The first ground is important only on the claim of privilege and it becomes unimportant, in view of our holding that actual malice is well pleaded, whether it clearly appears whether or not plaintiff Farr was chairman of the Eleventh California District of the Democratic Party.

The second specification is directed to allegations that the various defendants were members of the "Re-elect E. K. 'Ernie' Bramblett Committee" organized and responsible for the republican congressional campaign. The allegation is one of ultimate fact. The allegation that defendant Hardaway "acted as their servant and agent" is a sufficient pleading of the fact of his agency. (*General Mill & Lbr. Co.* v. *Robertson*, 126 Cal.App. 118 [14 P.2d 327]; *Phillips* v. *Reserve Life Ins. Co.*, 128 Cal.App.2d 540, 545-546 [275 P.2d 554]; *Cochran* v. *Goodman*, 3 Cal. 244.)

There is an objection that the alleged conspiracy among defendants is not clearly pleaded. It is alleged that defendants "did agree together" to further the candidacy of Bramblett by libeling plaintiffs and in pursuance thereof they published the articles complained of. This is a pleading of ultimate facts with the tortious purpose of the conspiracy and the tortious overt acts carried out in pursuance thereof. It may be admitted that a conspiracy to elect Bramblett would not be actionable, but a conspiracy to commit libel followed by the publication of libelous matter by the conspirators is as clearly an actionable tort. Plaintiffs could not more clearly allege the ultimate fact of conspiracy than by pleading that defendants "did agree together." (*Doudell* v. *Shoo*, 20 Cal.App. 424, 438 [129 P. 478]; *Poly, Heilbron & Co.* v. *Williams*, 101 Cal. 648, 650 [36 P. 102].)

The claim that it cannot be ascertained whether the matrices were displayed in connection only with their publication in

a newspaper is not good as to those counts in which there is no allegation of newspaper publication. ▮ The complaint must be liberally construed. (*Speegle* v. *Board of Fire Underwriters*, 29 Cal.2d 34, 42 [172 P.2d 867].) ▮ The plaintiffs are not required to plead negative facts (that the advertisement was not published in the particular newspaper) since "the salutary rule of pleading frowns upon averments negativing or anticipating defenses, and requires that such matters be left to the answer." (*Jaffe* v. *Stone*, 18 Cal.2d 146, 158-159, [114 P.2d 335, 135 A.L.R. 775].)

▮ The addition of new causes of action by the second publication should have been by supplemental rather than amended complaint but by not making timely objection on that ground when they were pleaded in the second amended complaint respondents must be held to have waived this objection. (*Groom* v. *Bangs, supra,* 153 Cal. 456, 459.)

▮ The complaint that those counts pleading an innuendo ascribe a broader meaning to the words than they can bear in that there is nothing in the advertisements giving "room for any contention as set forth in the innuendo that plaintiffs were or had been Reds or Communists or Communist sympathizers" overlooks the caption of the first advertisement: "Get the Reds out of America. Get America out of the Red." The second advertisement takes its color from the first. We cannot say that the innuendos are not reasonable ones. The imputation of communism or communist sympathies is a reasonable conclusion to be drawn and must certainly be held libelous as tantamount to calling plaintiffs traitors to their country. (See *Black* v. *Cutter Laboratories*, 43 Cal.2d 788 [278 P.2d 905].)

We agree with respondents that the special damages were not pleaded with sufficient certainty. (*Peabody* v. *Barham*, 52 Cal.App.2d 581, 585 [126 P.2d 668].) ▮ However the court erred in sustaining the demurrers *as to general and punitive damages,* as to those counts which we hold stated a cause of action, *without leave to amend.* While ordinarily leave to amend must be availed of if a demurrer is good on any ground the order in this case left appellants no choice but to stand on their complaint if they desired to assert the right to general and punitive damages since they were denied leave to amend in those particulars. If they had amended to assert only the right to special damages they would have waived their right to general damages, since by filing an amended complaint a party waives the right to question the

sustaining of a demurrer to his previous complaint. (*Rolley, Inc.* v. *Merle Norman Cosmetics, Inc.*, 129 Cal.App.2d 844 and cases cited at p. 852 [278 P.2d 63, 282 P.2d 991].)

The judgment is reversed as to counts 1, 2, 15, 17, 29, 30, 31, 32, 41, 42, 55, 57, 69, 70, 71 and 72 with directions to the trial court to permit appellants to file an amended complaint as to such counts; as to all other counts the judgment is affirmed. Appellants are awarded costs on appeal.

Kaufman, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied May 25, 1955.